# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-25092-ELFENBEIN

**USBCDC INVESTMENT FUND 180, LLC**,

      Plaintiff,

 v.

**DANIEL VOSOTAS**,

      Defendant.

_____/

## ORDER ON MOTION FOR LEAVE TO FILE A THIRD-PARTY COMPLAINT

     **THIS CAUSE** is before the Court on Defendant Daniel Vosotas's ("Defendant") Motion for Leave to File a Third-Party Complaint (the "Motion"), ECF No. [48], whereby Defendant seeks to bring a contribution claim against non-party Brandon Muhl ("Muhl"). *See* ECF No. [48]; ECF No. [48-1]. Plaintiff has since filed a Response, ECF No. [51], and Defendant has filed a Reply, ECF No. [53]. The Motion is now ripe for review. For the reasons explained below, Defendant's Motion for Leave, **ECF No. [48],** is **GRANTED**.

## I.     BACKGROUND

     This action arises out of a Loan Agreement (the "Loan") and Payment and Competition Guaranty (the "Guaranty") between Plaintiff, as lender by assignment, *see* ECF No. [1] at ¶¶28-29, and Greystone Tenant, LLC, as borrower ("Borrower"), and Defendant, Muhl, and James Vosotas, as guarantors (the "Guarantors"). *See* ECF No. [1] at ¶¶11-14; ECF No. [1-1] at 7; ECF No. [1-5]; ECF No. [1-7]. Plaintiff filed this one-count suit against Defendant for breach of guaranty, seeking recovery of approximately $3.43 million in principal, together with damages, interest, attorney's fees, and costs. *See* ECF No. [1] at ¶¶30, 32, 34-37.

The Complaint alleges that, on or about November 3, 2016, CCG Sub-CDE 43 ("CCG"), as lender, and the Borrower, entered into the Loan Agreement whereby CCG extended credit in the amount of $3,430,000.00. *See* ECF No. [1] at ¶11-12; ECF No. [1-1]. On the same date, the Guarantors executed the Guaranty, by which they "absolutely, unconditionally, irrevocably, jointly and severally guarantee, as primary obligors and not merely as sureties," *see* ECF No. [1-5] at ¶2, "the full and complete performance of the Loan Agreement such that a breach [by the Borrower] of the Loan Agreement triggered [the Guarantors'] liability under the Guaranty[,]" *see* ECF No. [1] at ¶15. *See also* ECF No. [1-5] at ¶3. Specifically, the Guaranty states that "Lender may enforce this Guaranty upon the occurrence and during the continuance of an Event of Default under any of the Loan Documents . . ." *See* ECF No. [1-5] at ¶3. The Loan Agreement provides that "[u]pon the occurrence of any Event of Default, Lender . . . may[, *inter alia*,] "accelerate maturity of the Notes, and demand payment of the principal sums due thereunder with interest, advances and costs . . ." *See* ECF No. [1-1] at ¶8.2(iv). Moreover, the Loan Agreement defines an "Event of Default" as, *inter alia*,:

> (i) if Borrower defaults under any other indebtedness of Borrower and such default is not cured within thirty (30) days;
>
> ***
>
> (l) if Borrower shall generally not pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors . . .;
>
> (m) if any Guarantor shall generally not pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; if any proceeding shall be instituted by such Guarantor seeking to adjudicate it bankrupt or insolvent . . .

*See* ECF No. [1-1] at ¶¶8.1(i), (l), (m).

On or about December 22, 2017, Borrower entered into another loan agreement with a separate lender (the "Subsequent Loan"), which James Vosotas also guaranteed. *See* ECF No. [1]

at ¶¶19-20. Plaintiff alleges that Borrower defaulted on the Subsequent Loan and, on or about January 13, 2022, a New York state court adjudicated the action to enforce the Subsequent Loan guaranties against James Vosotas, finding that the Subsequent Loan was in default and entering a judgment against James Vosotas. *See id.* at ¶¶22-24. Additionally, Plaintiff alleges that on October 3, 2023, James Vosotas personally filed for Chapter 7 bankruptcy, which constitutes an admission of his inability to pay his debts. *See id.* at ¶27. Plaintiff alleges that the default on the Subsequent Loan, the judgment against James Vosotas, and James Vosotas's bankruptcy filing constitute Events of Default under the Loan Agreement, thereby triggering Defendant's obligations under the Guaranty. *See id.* at ¶¶17, 26-27, 34-36. Accordingly, Plaintiff alleges that Defendant's failure to pay off the Loan after his liability was triggered is a material breach of the Guaranty. *See id.* Plaintiff asserts its claim against only one of the three Guarantors, excluding Muhl and James Vosotas. *See generally id.* Significantly, Plaintiff admits that Muhl is the ultimate member of Plaintiff, through his sole membership in the limited liability company. *See id.* at ¶1.

On February 26, 2025, Defendant filed his Answer and Affirmative Defenses. *See* ECF No. [19]. Shortly thereafter, Defendant's prior counsel withdrew, and on February 28, 2025, the Court entered an order staying proceedings to allow Defendant to obtain substitute counsel. *See* ECF No. [20]; ECF No. [21]. The Court ultimately lifted the stay on April 15, 2025. *See* ECF No. [23]; ECF No. [26]. On June 18, 2025, the Court referred this case in its entirety to me pursuant to the Parties' Consent to Magistrate Judge Jurisdiction. *See* ECF No. [36]. Thereafter, I conducted a status conference on July 10, 2025, to address pending motions and case management issues. *See* ECF No. [44]. Following the status conference, the Court entered an Order Setting Trial and Pre-Trial Schedule (the "Scheduling Order") with a deadline to amend pleadings of July 17, 2025. *See* ECF No. [1] at 45].

On July 17, 2025, Defendant filed the present Motion seeking leave to file a Third-Party Complaint against Muhl (the "Third-Party Complaint"), as co-guarantor of the Guaranty, alleging that if Defendant is found liable to Plaintiff, then Muhl is liable to Defendant for contribution. *See* ECF No. [48] at ¶10. Plaintiff opposes the Motion, arguing that it was untimely, the contribution claim is premature, and the claim is without merit. *See* ECF No. [51].

## II. LEGAL STANDARD

### A. Leave to File Third-Party Complaints

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend pleadings "shall be freely given when justice so requires," absent futility, undue delay, or unfair prejudice. Federal Rule of Civil Procedure 14(a)(1) allows a defendant to implead a third-party defendant "who is or may be liable to it for all or part of the claim against it." *See* Fed. R. Civ. P. 14(a); *see also Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982). "The question of whether to allow Rule 14 impleader is addressed to the 'sound discretion' of the Court." *Rothfos Corp. v. H&H Coffee Investments, LLC*, No. 22-CV-24000, 2024 WL 4880908, at *3 (S.D. Fla. Sept. 3, 2024) (quoting *All Underwriters Subscribing to Policy of Ins. No. B0621MMILSYB15055 v. Rika Boats Ltd.*, No. 16-CV-20498, 2017 WL 1439944, at *8 (S.D. Fla. Jan. 20, 2017) (internal quotations and citation omitted)). Courts are to construe Rule 14 liberally to promote judicial efficiency and avoid duplicative proceedings. *Edelsberg v. Brea Fin. Group, LLC*, No. 18-CV-62119, 2019 WL 13067432, at *1 (S.D. Fla. Mar. 16, 2019); *Zurich Am. Ins. Co. v. S. Waste Sys., LLC*, No. 09-CV-80466, 2010 WL 11505830, at *1 (S.D. Fla. May 14, 2010).

"Impleader, or third party practice, is only available when the third party defendant's liability is secondary to, or a derivative of, the original defendant's liability on the original plaintiff's claim." *Faser*, 674 F.2d at 860 (citing *United States v. Joe Grasso & Son, Inc.*, 380

F.2d 749, 751 (5th Cir. 1967)).  The rule permits impleader of claims that are contingent upon the outcome of the main action, even if the third-party claim has not yet accrued under substantive law.  *See United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987) (Rule 14 allows a third-party claim if the "third person's liability on that claim is in some way dependent upon the outcome of the main claim"); *Faser*, 674 F.2d at 860 ("In other words, if the defendant has no liability to the plaintiff, then the third party defendant has no liability to the defendant-third party plaintiff.") In assessing whether to permit impleader, courts weigh four factors: (1) the merits of the underlying action; (2) the merits of the proposed third-party claim; (3) the potential for complication or delay of the main action; and (4) prejudice to the third-party defendant. *See In re Suntex Marina Invs., LLC*, No. 19-CV-00080, 2021 WL 397357, at *2 (M.D. Fla. Jan. 19, 2021); *Cincinnati Specialty Underwriters Ins. Co. v. Code 3 Sec. & Prot. Services, Inc*, No. 16-CV-127-T-30TBM, 2016 WL 2759152, at *5 (M.D. Fla. May 12, 2016).

### B.  Florida Law on Contribution Claims

Under Florida law, the doctrine of equitable contribution exists "to prevent one of two . . . joint obligors [from] being required to pay more than his share of a common burden, or to prevent one obligor from being unjustly benefited or enriched at the expense of another." *Lopez v. Lopez*, 90 So. 2d 456, 458 (Fla. 1956); *Meckler v. Weiss*, 80 So. 2d 608, 609 (Fla. 1955).  "The foundational element of a claim for equitable contribution is that the parties share a 'common obligation' to pay a third party." *Hiscox Ins. Co. Inc. v. Watford Specialty Ins. Co.*, 647 F. Supp. 3d 1318, 1321 (S.D. Fla. 2022) (citing *Nova Info. Sys., Inc. v. Greenwich Ins. Co.*, 365 F.3d 996, 1006 (11th Cir. 2004) (applying Florida law)).

The doctrine of contribution applies to cases involving "common obligations" between co-obligors when the parties' agreement does not address co-obligors' rights to seek contribution

amongst themselves.  *See Shamieh v. HCB Fin. Corp.*, 355 So.3d 1050, 1054-55 (Fla. 1st DCA 2023) (co-borrowers remained liable to one another for contribution despite settlement with the creditor); *Palumbo v. Moore*, 777 So. 2d 1177, 1179 (Fla. 5th DCA 2001) (finding the trial court abused its discretion in dismissing the third-party claim for declaratory relief to determine whether a written agreement obligated a non-party to contribute or indemnify defendant); *Desrosiers v. Russell*, 660 So. 2d 396, 398–99 (Fla. 2d DCA 1995) (rejecting claims of oral modification and enforcing equal contribution among guarantors who signed a written guaranty).

And when contribution arises from contractual guaranties, Florida courts apply traditional rules of contract construction.  *See Desrosiers*, 660 So. 2d at 398.  If the guaranty is clear and unambiguous, liability is determined from the four corners of the agreement. *See id*. (rejecting trial court's finding of an oral side agreement where the guaranty "reflected the entire agreement between the guarantors and SunBank" and "could be modified only by a signed writing"); *Summit Consulting, Inc. v. J.J. Walsh Constr., Inc.*, 568 So. 2d 1290, 1292 (Fla. 2d DCA 1990), *review dismissed*, 576 So. 2d 290 (Fla. 1990) (stating that when a contract is unambiguous, "a court should determine liability by construing the contract itself").  Accordingly, Florida courts have consistently enforced contribution for common obligations among co-guarantors where the written instrument provides their liability is joint and several.  *See Fletcher v. Anderson*, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993) (holding that an obligor who overpaid his *pro rata* share of the obligation may seek contribution from co-obligor's share, but there is no right to enlarge solvent co-obligor's liability due to others' insolvency); *Shamieh*, 355 So.3d at 1054-55; *Palumbo*, 777 So. 2d at 1179; *Desrosiers*, 660 So. 2d at 398–99.

### III.    DISCUSSION

With these principles in mind, the Court turns to each of the issues raised in the Parties' filings: (1) whether the request for leave to add the Third-Party Complaint is timely, (2) whether the claims in the proposed Third-Party Complaint for contribution are ripe, and (3) whether third-party impleader is proper.

### A.  Defendant Timely Sought Leave to File the Third-Party Complaint

Plaintiff first argues that Defendant's Motion is untimely because the deadline to add parties expired.  *See* ECF No. [51] at ¶¶3-11.  The Court disagrees.  The Court's Scheduling Order set the deadline to amend pleadings for July 17, 2025.  *See* ECF No. [45].  Although the Scheduling Order did not expressly state a deadline to "add parties," it specifies the deadline to amend pleadings, which logically subsumes the deadline to join parties.  Although some judges in this District separately identify a deadline to add parties (as the same deadline to amend the pleadings), this Judge does not identify a separate deadline in her standard Scheduling Order because the ability to add parties naturally expires with a party's ability to amend its pleadings.  Because Defendant filed his Motion on July 17, 2025, *see* ECF No. [48], the Motion is timely, and no showing of "good cause" is required.

### B.  Defendant's Third-Party Contribution Claim is Ripe

As a threshold jurisdictional issue, the Court must decide whether Plaintiff is correct that Defendant's contribution claim is not yet ripe.  Plaintiff argues that Defendant's contribution claim against Muhl is not ripe because Defendant has neither made any payments under the Guaranty nor had a judgment entered against him for his breach.  *See* ECF No. [51] at ¶¶12-17.  Although Defendant's contribution claim may not have been otherwise permitted if it were brought independently, Rule 14 expressly permits such third-party claims.  *See C.D. v. Red Roof Inns, Inc.*,

No. 23-CV-4347-MHC, 2024 WL 5339456, at *4 (N.D. Ga. July 15, 2024). Rule 14(a)(1) provides that a defendant may bring a third-party claim against "a nonparty who is *or may be* liable to it for all or part of the claim against it." (emphasis added). Nothing in Rule 14 requires that judgment first be entered or liability conclusively established before a contribution claim may be brought.

Nor do the cases Plaintiff cites compel this conclusion based on Florida contribution law. Plaintiff cites several cases that consider contribution in the tort context, applying Florida's Uniform Contribution Among Tortfeasors Act ("FUCATA") rather than in the contractual context, as applicable here.[1] Florida courts have made clear that FUCATA does not apply where the underlying action is based on contract. *See Shamieh*, 355 So. 3d at 1054 (citing *Helmet House Corp. v. Stoddard*, 861 So. 2d 1178, 1179 (Fla. 4th DCA 2003) ("Both parties agree that [Florida's] Uniform Contribution Among Tortfeasors Act . . . does not apply because the parties were sued under a contract theory."). Here, the action arises from a Guaranty that imposes contractual joint and several liability on each of the Guarantors. *See* ECF No. [1] at ¶15; ECF No. [1-5] at ¶3. To the extent the rationale of these cases relies on FUCATA, their reasoning does not apply to determine whether Plaintiff's contract- and equity-based contribution claim is ripe.

Moreover, the contract-based cases Plaintiff cites do not consider the ripeness of a third-party claim for contribution. *Shamieh*, *Desrosiers*, and *Hanrahan* address direct actions between co-obligors after one of the obligors already paid more than their share of their common obligation.

---

[1] Plaintiff cites the following cases that deal with contribution in the tort context: *Claudio v. Regalado*, 116 So. 3d 451, 457 (Fla. 2d DCA 2013) (allowing defendant to seek contribution from co-tortfeasor to ensure liability was limited to his proportionate share); *Gortz v. Lytal, Reiter, Clark, Sharpe, Roca, Fountain & Williams*, 769 So. 2d 484, 487 (Fla. Dist. Ct. App. 2000) (same); *New Hampshire Ins. Co. v. Petrik*, 343 So. 2d 48 (Fla. 1st DCA 1977) (defendant may pursue a contribution claim against a joint tortfeasor not named by the plaintiff by filing a third-party complaint in the original negligence action); *Florida Farm Bureau Cas. Co. v. Batton*, 444 So. 2d 1128, 1130 (Fla. 4th DCA 1984) (reversing summary judgment and holding that a subcontractor may seek contribution from the state notwithstanding a separate indemnity agreement between the general contractor and the state, because such a private agreement does not bar contribution claims among joint tortfeasors).

*See Shamieh*, 355 So. 3d at 1052 (holding that co-obligor who paid more than his share of a joint debt could pursue contribution claim against co-obligor who paid nothing); *Desrosiers*, 660 So. 2d at 397 (same); *Hanrahan v. Barry*, 363 So.2d 54, 55 (Fla. 3d DCA 1978) (reversing summary judgment for contribution where trial court failed to account for existence of third co-guarantor, holding defendant was liable only for one-third of debt). Because the plaintiffs in these cases brought direct, rather than third-party, claims and had already paid more than their share of a common obligation when they filed suit, the courts were not faced with the question presented here. Instead, these cases stand for the proposition that Defendant and Muhl as co-guarantors are liable to each other if either of them pays more than their *pro rata* share of their common obligation under the Guaranty.

The Court finds *Paulmbo* to be most applicable. In *Palumbo*, the plaintiff-lender brought the underlying action seeking to hold the defendant-shareholder liable on personal guarantees he made on a corporate loan following the corporation's default. 777 So. 2d at 1178. The defendant filed a cross-claim and a third-party complaint against his fellow shareholders, seeking a declaration on whether, under a separate agreement among them, the other shareholders are required to contribute to or indemnify him for any judgment entered against him. *See id*. at 1179. The appellate court held that declaratory relief was appropriate because the plaintiff obtained a judgment against defendant based on his personal guarantee[2] and the writing arguably created joint liability and presented a bona fide controversy over the parties' obligations. *See id*. Accordingly,

---

[2] The opinion does not specify when the judgment against the defendant was entered, but its recitation of the procedural history suggests the judgment had not yet been entered at the time the defendant filed his cross-claim and third-party complaint, and that the judgment existed only by the time of the appeal. *See id*. at 1178 (explaining that defendant "responded" to plaintiff's complaint by filing the cross-claim and third party complaint).

it found the trial court abused its discretion in dismissing the claims with prejudice and remanded for further proceedings.  *See id.*

Similarly, Defendant moves to implead Muhl, an alleged co-guarantor, seeking contribution in equity so that liability is shared between them. "This is the sort of 'derivative liability' that parties often use impleader to assert: [the defendant] 'is attempting to transfer to [the third-party] the liability asserted against [the defendant by the original plaintiff].'"  *C.D.*, 2024 WL 5339456, at *4 (quoting *Lamar Co. v. Goshen Springs Prop. III, LLC*, No. 20-CV-04246-LMM, 2021 WL 9598436, at *4 (N.D. Ga. Apr. 5, 2021) (quoting 6 Arthur R. Miller, Mary Kay Kane & A. Benjamin Spencer, *Federal Practice & Procedure* § 1446 (3d ed. 2020)) (cleaned up). Accordingly, Defendant's third-party claim for contribution is not subject to dismissal on ripeness grounds.

### C.  Impleader is Proper for Defendant's Third-Party Complaint

Substantively, the Parties agree that the Court should weigh four factors articulated in *In re Suntex* in deciding whether to permit the Third-Party Complaint: (1) the merits of the underlying action; (2) the merits of the proposed third-party claim; (3) the potential for complication or delay of the main action; and (4) prejudice to the third-party defendant.  *See* ECF No. [48] at ¶15 (citing *In re Suntex*, 2021 WL 397357, at *2); ECF No. [51] at ¶18 (same).  The first two factors relate to whether the "merits" being litigated in the underlying and the third-party actions are legally viable and factually connected in a way that justifies impleader.  *See In re Suntex*, 2021 WL 397357 at *2 (considering whether impleader was procedurally permissible in admiralty case, the factual scope of the underlying claim, and the factual scope of the third-party claim); *see also Cincinnati*, 2016 WL 2759152 at *5.

As to the merits of the underlying Complaint, Plaintiff asserts a straightforward claim for breach of guaranty against one of the three Guarantors.  *See generally* ECF No. [1].  Plaintiff alleges that Defendant unconditionally guaranteed the Borrower's obligations, and when the Borrower defaulted, Defendant became liable for the outstanding balance, interest, and fees.  *See* ECF No. [1] at ¶11-15, 17, 26-27, 34-36; ECF No. [1-5] at ¶¶2-3.   Plaintiff's theory rests on contract enforcement and the documents attached to the Complaint support the claim.  *See* ECF No. [1-1]; ECF No. [1-5].  If proven, these allegations establish liability on the face of the Guaranty.  The breach of guaranty claim will require the Court to evaluate not only the contractual language of the Guaranty but also fact-based questions including, whether a breach occurred, and the validity of Defendant's fact-based affirmative defenses, including merger, prevention of performance, the general validity of the Guaranty, fraud, etc.  *See* ECF No. [47] at 6-10.

Second, the viability of the Third-Party Complaint is entirely contingent on Plaintiff obtaining a judgment against Defendant.  The Third-Party Complaint alleges that Muhl has the same obligations, duties, and liability as Defendant under the same Guaranty and Loan Agreement.  *See* ECF No. [48-1] at ¶¶14-16.  Defendant argues that this equal obligation to Plaintiff entitles him to shift part of any liability imposed on him to Muhl.  *See id*.  If Plaintiff prevails on its claims against Defendant, Muhl may be derivatively liable for a portion of that judgment.  Additionally, Muhl's liability to Defendant is factually intertwined with Defendant's liability to Plaintiff.  Both actions arise from the same Loan Agreement and Guaranty, turn on overlapping evidence, and implicate identical questions of contractual interpretation and performance.  What is more — Plaintiff argues that "Muhl has paid more than his obligations under the guaranty and is, thus, entitled to contribution from Defendant."  *See* ECF No. [51] at ¶20.  Under the general rule of contribution, when one co-obligor "pays more than his [or her] fair share of [a] debt owed by both,

the payer is entitled to contribution from the other." *Meckler*, 80 So. 2d at 609. This assertion underscores that Defendant's liability cannot be evaluated in isolation. Rather, the allocation of responsibility among co-guarantors is inextricably bound up with the Plaintiff's claim against Defendant. Plaintiff's own theory of contribution highlights the factual overlap between the underlying breach of guaranty action and the Third-Party Complaint. Addressing both together will permit the Court to resolve in a single proceeding not only whether Defendant is liable under the Guaranty, but also how that liability, if any, should be apportioned among the co-guarantors. In this way, the "merits" of the two actions are factually connected and adjudicating them together will avoid inconsistent results and promote efficiency, precisely the goals of Rule 14 impleader.

Third, the potential for complication or delay of the main action is minimal and, as stated above, would effectuate Rule 14's purpose — "to have one lawsuit do the work of two." *See Cincinnati*, 2016 WL 2759152 at *5 (internal quotations and citation omitted). Deciding Plaintiff's claim will necessarily establish the obligations of all guarantors, and it is more efficient for one fact-finder to decide those issues together rather than in piecemeal litigation. Impleader therefore promotes judicial economy, avoids inconsistent outcomes, and ensures fairness by allowing Defendant to pursue contribution in the same proceeding in which liability, if any, to Plaintiff is established. With respect to case management, allowing impleader will not unduly complicate proceedings. Both the Complaint and Third-Party Complaint arise out of the same transaction, involve the same operative documents, and present overlapping legal issues. Efficiency, therefore, favors resolution in a single action.

Finally, prejudice to Muhl is minimal. Plaintiff has chosen to proceed only against Defendant even though the Complaint acknowledges that Muhl is one of three co-guarantors of the Loan. *See* ECF No. [1] at ¶¶17, 26–27, 34–36. Plaintiff further admits that Muhl is the ultimate

member of Plaintiff through his sole membership in the limited liability company. *See id.* at ¶1. Given this unique posture, Muhl is already intimately connected to both the Loan and the litigation. His interests are aligned with Plaintiff's, and his obligations under the Guaranty are identical to those asserted against Defendant. As such, requiring Muhl to appear as a third-party defendant would not expose him to any new or unforeseen liability, but merely allows the Court to adjudicate in a single proceeding the allocation of any responsibility among the co-guarantors. Far from prejudicing Muhl, impleader would promote efficiency, ensure consistent results, and avoid duplicative litigation. Taken together, Rule 14(a)(1) and Florida contribution law establish that impleading co-guarantors here is procedurally proper and substantively supported by Florida law on contribution.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Leave to File a Third-Party Complaint, **ECF No. [48]**, is **GRANTED**. Defendant shall file the Third-Party Complaint and submit the proposed Summons within seven (7) days of this Order and promptly effect service upon Third-Party Defendant Branden Muhl.

**DONE and ORDERED** in Chambers in Miami, Florida on September 15, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All counsel of record