**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-25092-ELFENBEIN

**USBCDC INVESTMENT FUND 180, LLC**,

      Plaintiff/Counter-Defendant,

**v.**

**DANIEL VOSOTAS**,

      Defendant/Counter-Plaintiff.

_____/

**DANIEL VOSOTAS**,

      Third-Party Plaintiff/Cross-Defendant,

**v.**

**BRANDEN MUHL**,

      Third-Party Defendant/Cross-Plaintiff.

_____/

## ORDER ON PLAINTIFF/COUNTER-DEFENDANT'S SECOND AMENDED MOTION FOR SUMMARY JUDGMENT

      **THIS CAUSE** is before the Court on Plaintiff USBCDC Investment Fund 180, LLC's ("Plaintiff") Second Amended Motion for Summary Judgment (the "Motion"), by which Plaintiff seeks summary judgment on its claims and Defendant Daniel Vosotas's ("Defendant") affirmative defenses. *See* ECF Nos. [74], [75]. Defendant filed a Response in Opposition to the Motion (the "Response"). *See* ECF Nos. [99], [100]. Plaintiff filed a Reply in Support of the Motion (the "Reply"), ECF No. [101]. Upon review of the Motion, the Response, the Reply, the record, and the relevant law, the Motion, **ECF No. [74]**, is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

### A. Factual Background

This case arises from a dispute over a Payment and Completion Guaranty executed in connection with a New Markets Tax Credit ("NMTC") financing transaction involving the redevelopment of the Greystone Hotel in Miami Beach, Florida. *See* ECF Nos. [1] at ¶¶11–30; [75] at ¶¶1–13; [99] at 2–8; [99-1] at ¶¶1–24.

Plaintiff commenced this action on December 27, 2024, by filing a one-count Complaint for breach of guaranty against Defendant. *See* ECF No. [1]. Plaintiff invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). *See* ECF No. [1] at ¶3. Plaintiff alleges that complete diversity exists because Plaintiff is a citizen of Texas and Defendant is a citizen of Florida. *See* ECF No. [1] at ¶¶1–3. Plaintiff also alleges that the amount in controversy exceeds $75,000.00 because the principal balance allegedly due is $3,430,000.00, exclusive of interest and enforcement costs. *See* ECF No. [1] at ¶¶3, 30.

It is undisputed that on November 3, 2016, CCG Sub-CDE 43, LLC ("CCG"), as lender, and Greystone Tenant, LLC ("Greystone"), as borrower, entered into a Loan Agreement. *See* ECF Nos. [1] at ¶11; [75] at ¶1; [99-1] at ¶1. The Loan Agreement was part of a NMTC financing structure related to the Greystone Hotel project. *See* ECF Nos. [1] at ¶¶11–15; [47] at 1–3; [74] at 1–3; [99] at 2–8. Under the Loan Agreement, CCG loaned Greystone $3,430,000.00. *See* ECF Nos. [1] at ¶12; [75] at ¶2; [99-1] at ¶2. That loan was evidenced by two promissory notes: one in the original principal amount of $2,414,750.00 and one in the original principal amount of $1,015,250.00. *See* ECF Nos. [1] at ¶12; [75] at ¶2; [99-1] at ¶2.

Also on November 3, 2016, Defendant Daniel Vosotas ("Defendant"), his son James Vosotas, and Branden Muhl ("Muhl") executed the Payment and Completion Guaranty in favor of

2

CCG. *See* ECF Nos. [1] at ¶¶13–15; [75] at ¶¶3, 7; [99-1] at ¶¶3, 7.  The Guaranty identifies Defendant as one of the guarantors of the obligations arising from the Loan Agreement.  *See* ECF Nos. [1] at ¶¶13–15; [75] at ¶¶3–7; [99-1] at ¶¶3–7.  According to Plaintiff, under the Guaranty, Defendant guaranteed the full and complete performance of the Loan Agreement.  *See* ECF Nos. [1] at ¶15; [74] at 2–7; [75] at ¶4.  Defendant disputes Plaintiff's characterization of the Guaranty's operative terms and argues that Plaintiff has paraphrased the contract in a way that ignores disputed language concerning the "occurrence" and "continuance" of an Event of Default.  *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–6.

The Loan Agreement identifies several Events of Default, including circumstances involving defaults under other indebtedness and failures by Greystone or guarantors to pay debts as they become due.  *See* ECF Nos. [1] at ¶¶15–18; [75] at ¶¶4–6; [99-1] at ¶¶4–6.  Plaintiff states that those provisions triggered Defendant's obligations under the Guaranty after events involving a separate construction loan and James Vosotas's financial obligations thereunder.  *See* ECF Nos. [1] at ¶¶19–27; [74] at 2–7; [75] at ¶¶6–9.  Specifically, Plaintiff alleges that, on December 22, 2017, Greystone entered into a separate construction loan agreement and that James Vosotas executed guaranties related to that separate construction loan.  *See* ECF Nos. [1] at ¶¶19–20; [75] at ¶¶8–9; [99-1] at ¶¶8–9.  Plaintiff further alleges that, on December 31, 2019, notices of default were sent to James Vosotas for failure to repay and keep in balance the construction loan at maturity.  *See* ECF Nos. [1] at ¶¶21–22; [75] at ¶8.  Defendant disputes whether Plaintiff has provided sufficient evidence regarding the alleged notices of default, including the dates, recipients, means of transmission, and contents of those notices.  *See* ECF Nos. [99] at 7–13; [99-1] at ¶8; [100] at ¶3.

Plaintiff also alleges that the lender under the construction loan sued James Vosotas in New York to enforce the construction-loan guaranties. *See* ECF Nos. [1] at ¶¶23–25; [75] at ¶9; [99-1] at ¶9. On January 13, 2022, the Supreme Court of New York entered judgment against James Vosotas in the amount of $19,380,664.30. *See* ECF Nos. [1] at ¶¶23–25; [1-6]; [75] at ¶9; [99-1] at ¶9. Plaintiff contends that the New York Judgment remains unpaid and constitutes an Event of Default under the Loan Agreement. *See* ECF Nos. [1] at ¶¶24–27; [74] at 2–7; [75] at ¶¶8–9. Defendant does not dispute that a New York judgment was entered against James Vosotas, but disputes Plaintiff's legal conclusion that the judgment, without more, establishes Defendant's liability under the Guaranty. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶8–9.

Plaintiff further alleges that James Vosotas filed a Chapter 7 bankruptcy petition on October 3, 2023, and that his bankruptcy filings reflected no assets available for distribution. *See* ECF Nos. [1] at ¶27; [75] at ¶8. Plaintiff contends that the construction-loan default, the New York Judgment, and James Vosotas's bankruptcy-related circumstances triggered the Guaranty and permitted Plaintiff to pursue a claim against Defendant for the full amount due. *See* ECF Nos. [1] at ¶¶24–35; [74] at 2–7; [75] at ¶¶6–13. Defendant disputes that Plaintiff has established a contractual default sufficient to trigger his liability for the full principal amount of the Notes. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–13; [100] at ¶¶2–12.

On January 31, 2023, CCG executed an Assignment and Assumption Agreement assigning its interests in the Loan Agreement and Guaranty to Plaintiff. *See* ECF Nos. [1] at ¶28; [1-7]; [75] at ¶10; [99-1] at ¶11. CCG also executed allonges to the two Notes making the Notes payable to Plaintiff. *See* ECF Nos. [1] at ¶29; [1-8]; [75] at ¶10. Plaintiff contends that, through the Assignment and allonges, it became the owner and holder of the Loan Agreement, Notes, and Guaranty. *See* ECF Nos. [1] at ¶¶28–30; [74-1] at ¶¶10–15; [75] at ¶¶10–13. Defendant disputes

whether Plaintiff has sufficiently established that it holds enforceable rights against him under the Loan Agreement, Notes, Guaranty, Assignment and Assumption Agreement, and allonges. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶11–17; [100] at ¶¶9–12. Defendant argues that the Assignment and Assumption Agreement contains undated signature pages and that Plaintiff has not produced originals or full copies of the Notes with allonges sufficient to prove Plaintiff's status as holder. *See* ECF Nos. [99] at 7–9; [99-1] at ¶¶11–17; [100] at ¶¶9–12.

Plaintiff maintains that the principal balance of $3,430,000.00 remains due and owing under the Loan Agreement, exclusive of interest, attorney's fees, costs, and enforcement expenses. *See* ECF Nos. [1] at ¶30; [74] at 2; [74-1] at ¶¶12–15; [75] at ¶¶11–13. Plaintiff also maintains that the filing of this lawsuit accelerated the indebtedness. *See* ECF Nos. [1] at ¶¶30–35; [74] at 2; [75] at ¶¶11–13; [102] at ¶17. Defendant disputes that Plaintiff has shown any unpaid amount owed by Defendant to Plaintiff. *See* ECF Nos. [99] at 2–13; [99-1] at ¶¶15–18; [100] at ¶¶9–12. Defendant asserts that Plaintiff has not produced loan payment records, loss calculations, tax filings, financial statements, or other documents reflecting an actual unpaid balance or actual financial loss. *See* ECF Nos. [99] at 2–9; [99-1] at ¶¶15–18; [100] at ¶¶9–12.

Defendant also asserts that a May 17, 2024 declaration from USBCDC's Vice President did not state that any amount was owed by Greystone, Defendant, or any guarantor. *See* ECF Nos. [99] at 2–8; [99-1] at ¶18. According to Defendant, that declaration instead stated that James Vosotas and Defendant had been delinquent on annual reporting and other tax-credit-related requirements since at least 2020. *See* ECF Nos. [99] at 2–8; [99-1] at ¶18. Defendant further contends that Plaintiff had been dealing exclusively with Branden Muhl on tax-credit-related contracting, operations, compliance, reporting, and managing-member matters since October 2020. *See* ECF Nos. [99] at 2–8; [99-1] at ¶19; [100] at ¶¶3, 6. Plaintiff, in turn, disputes

Defendant's assertion that the absence of the categories of documents identified by Defendant defeats Plaintiff's Motion. *See* ECF Nos. [101] at 1–8; [102] at ¶¶15–19.

Defendant filed an Answer, Affirmative Defenses, and Counterclaim, which he later amended. *See* ECF Nos. [19], [47]. In his Amended Answer, Defendant denied liability and asserted twenty-two affirmative defenses. *See* ECF No. [47] at 4–10. Defendant's affirmative defenses include failure to state a claim, lack of standing, waiver, estoppel, failure of conditions precedent, fraud or misrepresentation, lack of consideration, duress or undue influence, ambiguity, breach of the underlying agreements, statute of limitations, laches, failure to mitigate damages, lack of subject-matter jurisdiction, unclean hands, accord and satisfaction, and nonparty fault attributable to Muhl. *See* ECF No. [47] at 4–10.

Plaintiff maintains that its summary judgment evidence establishes the existence of the Loan Agreement, the Notes, the Guaranty, the Assignment, the alleged default, and the unpaid principal balance. *See* ECF Nos. [74] at 1–20; [74-1] at ¶¶4–15; [75] at ¶¶1–13; [101] at 1–8. Defendant's central theory is that the NMTC transaction was structured to deliver tax credits, that the applicable tax-credit period ended in or around January 2023, and that the transaction was then unwound. *See* ECF Nos. [47] at 1–3; [67] at 2–12; [99] at 2–8; [99-1] at ¶¶17–24. Defendant contends that, as part of that unwind, the underlying principal debt was extinguished and the guarantors were discharged because no debt remained to be guaranteed. *See* ECF Nos. [47] at 1–3; [67] at 2–12; [99] at 2–8; [99-1] at ¶¶17–24. Plaintiff disputes that the NMTC unwind extinguished the Notes or released Defendant from the Guaranty. *See* ECF Nos. [74] at 1–20; [78] at 2–9; [101] at 1–8; [102] at ¶¶17–24. Plaintiff contends that neither CCG nor Plaintiff issued a written satisfaction, release, or discharge of the Notes or Guaranty. *See* ECF Nos. [78] at 2–9; [101] at 1–8; [102] at ¶¶17–24.

Defendant also relies on statements made by Muhl in connection with contribution-related pleadings in this case. *See* ECF Nos. [67] at 2–12; [99] at 2–8; [99-1] at ¶¶21–24. According to Defendant, Muhl alleged in October 2025 that he "performed all of his duties under the Guaranty and paid amounts due under the Guaranty in full, without contribution from Vosotas." ECF Nos. [67] at 2–4; [99] at 2–5; [99-1] ¶ 21. Defendant further contends that Muhl's contribution theory stated that, because Muhl had already paid the amount due under the Guaranty, Defendant was liable to Muhl for contribution. *See* ECF Nos. [67] at 2–4; [99] at 2–5; [99-1] at ¶¶21–24. Defendant argues those statements are inconsistent with Plaintiff's present position that the $3,430,000.00 principal balance remains unpaid and recoverable from Defendant. *See* ECF Nos. [67] at 2–12; [99] at 2–8; [99-1] at ¶¶21–24. Plaintiff disputes Defendant's reading of Muhl's contribution-related allegations. *See* ECF Nos. [78] at 4–5; [101] at 2–6; [102] at ¶¶21–24. Plaintiff contends that Muhl did not pay the principal or interest balance due under the Notes. *See* ECF Nos. [78] at 4–5; [101] at 2–6; [102] at ¶¶21–24. Plaintiff maintains that Muhl's payments related to QLICI New Markets Tax Credit legal, compliance, reporting, enforcement, and administrative costs, and not to repayment of the Notes' principal or interest. *See* ECF Nos. [78] at 4–5; [101] at 2–6; [102] at ¶¶21–24.

Plaintiff also argues that Defendant waived his asserted defenses under the express terms of the Guaranty. *See* ECF Nos. [1] ¶33; [1-5] § 5; [74] at 3–15; [101] at 1–7. Plaintiff relies on the Guaranty's waiver provisions, which Plaintiff contends bar Defendant from asserting defenses, setoffs, notice-based objections, and related challenges to enforcement. *See* ECF Nos. [1] at ¶33; [1-5] § 5; [74] at 3–15; [101] at 1–7. Defendant disputes that the waiver provisions entitle Plaintiff to summary judgment on all affirmative defenses. *See* ECF Nos. [47] at 4–10; [99] at 7–13; [99-1] at ¶¶4–24. Defendant argues that the waiver provisions do not resolve threshold issues

concerning whether any debt exists, whether Plaintiff holds enforceable rights, whether an Event

of Default occurred, whether the debt was extinguished, and whether Plaintiff can prove damages.

*See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–24; [100] at ¶¶2–12.

### B.  Procedural History

Relevant to the issues raised on summary judgment below, on January 12, 2026, Defendant

moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that

Plaintiff lacked Article III standing and could not satisfy the amount-in-controversy requirement

because the underlying debt had allegedly been paid, extinguished, discharged, or otherwise

satisfied.  *See* ECF No. [67] at 2–12.  The Court thereafter denied Defendant's Rule 12(b)(1)

motion, concluding that Defendant's arguments concerning payment, extinguishment, discharge,

the NMTC unwind, contribution, and double recovery went to the merits of Plaintiff's breach-of-

guaranty claim rather than to Article III standing.  *See* ECF No. [110] at 9–14.  The Court also

concluded that Plaintiff adequately alleged a concrete economic injury and satisfied the amount-

in-controversy requirement for diversity jurisdiction at that stage of the case.  *See* ECF No. [110]

at 9–14.

While the Motion to Dismiss remained pending, Plaintiff filed its Second Amended Motion

for Summary Judgment in which Plaintiff seeks summary judgment in its favor on its breach-of-

guaranty claim and on Defendant's affirmative defenses.  *See* ECF No. [74].  In short, while the

Parties agree that the Loan Agreement, Notes, Guaranty, Assignment and Assumption Agreement,

and allonges were executed, they dispute the legal and factual consequences of those documents.

*See* ECF Nos. [1] at ¶¶11–30; [75] at ¶¶1–13; [99-1] at ¶¶1–24.  The Parties' disputes include

whether an Event of Default occurred sufficient to trigger Defendant's liability, whether the

NMTC unwind extinguished the debt, whether Plaintiff has proved an unpaid principal balance,

whether Muhl's alleged payments satisfied any amounts due, whether Plaintiff is the proper holder of enforceable rights, and whether Defendant waived his affirmative defenses. *See* ECF Nos. [74] at 1–20; [75] at ¶¶1–13; [99] at 1–13; [99-1] at ¶¶1–24; [100] at ¶¶2–12; [101] at 1–8; [102] at ¶¶17–24. The Motion is fully briefed and ripe for review. *See* ECF Nos. [74], [75], [99], [99-1], [100], [101], [102].

## II.   LEGAL STANDARDS

### A.  Summary Judgment Standard

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if it "would affect the outcome of the suit under the governing law." *Id.* "The mere existence of a scintilla of evidence in support of" the non-moving party's position is insufficient; instead, "there must be evidence on which the jury could reasonably find for the" non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "Even when the parties agree on the basic facts, summary judgment is inappropriate if reasonable minds might differ on the inferences to be drawn from those facts." *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986). The Court "may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Id.*; *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If the movant satisfies that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To make that showing, the non-moving party "must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Shiver*, 549 F.3d at 1343. Such evidence may include the party's "own affidavits," along with "depositions, answers to interrogatories, and admissions on file." *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1355 (S.D. Fla. 2017); *see also* Fed. R. Civ. P. 56(c)(1)(A).

Even if the non-moving party fails to properly respond to a fact or argument, the Court "cannot base the entry of summary judgment on the mere fact that" the non-moving party failed to respond, but instead "must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Thus, even where the non-moving party does not properly place any material facts in controversy, the Court must "review the full record on summary judgment," *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008), and determine whether the record "supports the uncontroverted material facts that the movant has proposed," *Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1355.

Those same summary judgment principles apply when a party seeks partial summary judgment on affirmative defenses. *See Darby v. Carnival Corp.*, No. 19-CV-21219, 2021 WL 6424601, at *1 (S.D. Fla. Nov. 19, 2021), *report and recommendation adopted*, No. 19-CV-21219,

2022 WL 105216 (S.D. Fla. Jan. 11, 2022); *Villar v. Cammarata Mgmt., Inc.*, No. 19-CV-81625, 2020 WL 2988813, at *5 (S.D. Fla. June 4, 2020). "Partial summary judgment may be granted on affirmative defenses." *Lebron v. Royal Caribbean Cruises*, Ltd., No. 16-CV-24687, 2018 WL 5098972, at *2 (S.D. Fla. Aug. 14, 2018), *report and recommendation adopted sub nom. Lebron v. Royal Carribean Cruises Ltd.*, No. 16-CV-24687, 2018 WL 5098870 (S.D. Fla. Aug. 28, 2018) (citing *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996)). An affirmative defense is "[a]ny matter that does not tend to controvert the opposing party's prima facie case as determined by the applicable substantive law." *Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-CV-24668, 2021 WL 1348489, at *7 (S.D. Fla. Mar. 5, 2021) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)). Stated differently, "[a]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Id.* (quoting *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013)).

When a plaintiff moves for summary judgment on a defendant's affirmative defenses, the plaintiff bears the burden of showing that the defendant "cannot maintain these defenses by a preponderance of the evidence." *Lebron*, 2018 WL 5098972, at *2; *see also Reed*, 2021 WL 1348489, at *4; *Eli Rsch., LLC v. Must Have Info Inc.*, No. 13-CV-695-FTM-38CM, 2015 WL 5934632, at *2 (M.D. Fla. Oct. 6, 2015). Merely asserting that the defendant has no evidence supporting an affirmative defense is not enough. *See Reed*, 2021 WL 1348489, at *5; *Eli Rsch.*, 2015 WL 5934632, at *3. Instead, the moving party must do more than make a conclusory "no evidence" assertion and must show, under the Rule 56 record, that the defense cannot be maintained. *See Reed*, 2021 WL 1348489, at *5; *Baez v. MSC Cruises, S.A.*, No. 20-CV-22732-LFL, 2022 WL 22883192, at *5 (S.D. Fla. June 20, 2022).

At the same time, a defendant opposing summary judgment on affirmative defenses must submit or identify record evidence sufficient to create a genuine dispute of material fact as to those defenses. *See Baez*, 2022 WL 22883192, at *3; *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 14-CV-3129-T-30TBM, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015). And although "[e]ntry of a summary judgment is improper when there is no evidence contradicting or opposing an affirmative defense," a party cannot avoid summary judgment merely by labeling as an affirmative defense what is, in substance, a denial of an element of the plaintiff's *prima facie* case. *Lebron*, 2018 WL 5098972, at *2 (quoting *United States v. Marder*, No. 13-CV-24503-KMM, 2016 WL 5404303, at *14 (S.D. Fla. Sept. 23, 2016)). A defense that merely points out a defect in the plaintiff's *prima facie* case is not a true affirmative defense. *See id.*

## B. Breach of Guaranty

Under Florida law, a guaranty is construed according to the ordinary rules governing contract interpretation. *See Anderson v. Trade Winds Enters. Corp.*, 241 So. 2d 174, 177 (Fla. 4th DCA 1970). "To claim a breach of guaranty, one must allege the same elements of any breach of contract claim: (1) [t]he existence of a contract, (2) breach of the contract, and (3) damages arising from the breach of contract." *Luxor Agentes Autonomos De Investimientos v. Oliveira*, No. 13-CV-20806, 2013 WL 12064525, at *1 (S.D. Fla. Oct. 1, 2013). Once those elements are established, the guarantor becomes liable according to the terms of the guaranty unless a legally cognizable defense precludes enforcement. *See Anderson*, 241 So. 2d at 178. Accordingly, where, as here, the plaintiff seeks summary judgment on a breach-of-guaranty claim, the plaintiff bears the initial burden of demonstrating through competent record evidence that there is no genuine dispute of material fact regarding: (1) the execution and enforceability of the guaranty; (2) the plaintiff's right to enforce the guaranty; (3) the occurrence of the contractual conditions giving rise

12

to the guarantor's liability, including any required Event of Default; (4) the guarantor's failure to perform the obligations imposed by the guaranty; and (5) the plaintiff's resulting damages. *See Luxor Agentes Autonomos De Investimientos*, 2013 WL 12064525, at \*1; Fed. R. Civ. P. 56(a); *Celotex Corp*, 477 U.S. at 322–23.

## III.   DISCUSSION

### A.  Plaintiff's Entitlement to Summary Judgment on Count I – Breach of Guaranty

Plaintiff first seeks summary judgment in its favor on its breach-of-guaranty claim. *See* ECF No. [74].   Plaintiff argues that there are no genuine disputes of material fact because Defendant executed the Guaranty, an Event of Default occurred under the Loan Agreement, Plaintiff acquired the Loan Agreement and Guaranty by assignment, Plaintiff accelerated the indebtedness by filing suit, and Defendant has not paid the amount allegedly due. *See* ECF Nos. [74] at 1–20; [75] at ¶¶1–16.  Defendant responds that summary judgment is inappropriate because the record contains genuine disputes regarding Plaintiff's right to enforce the Guaranty, whether an Event of Default occurred, whether Defendant's obligations were triggered, whether any indebtedness remains due, whether the NMTC transaction extinguished or satisfied the debt, and whether Plaintiff has proved damages. *See* ECF Nos. [99] at 1–13; [99-1] at ¶¶4–24; [100] at ¶¶2–12.

The Court agrees with Defendant that Plaintiff has not carried its Rule 56 burden on liability.  As stated above, summary judgment may be entered only if Plaintiff shows that there is "no genuine dispute as to any material fact" and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  In deciding whether Plaintiff has made that showing, the Court must view the record in the light most favorable to Defendant and draw all reasonable inferences in Defendant's favor. *See Davis*, 451 F.3d at 763.  The Court may not weigh competing evidence,

resolve disputed factual issues, or select between competing reasonable inferences. *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. And, even if certain facts are undisputed, summary judgment remains improper if reasonable minds might differ on the inferences to be drawn from those facts. *See Carlin Commc'n*, 802 F.2d at 1356.

That limitation matters here because Plaintiff's breach-of-guaranty claim turns on more than the existence of the Guaranty. Under Florida law, a breach-of-guaranty claim requires proof of the same elements required for breach of contract: the existence of a contract, breach, and damages. *See Luxor*, 2013 WL 12064525, at *1. And because Plaintiff seeks summary judgment on that claim, Plaintiff must establish through competent record evidence that no genuine dispute exists as to the execution and enforceability of the Guaranty, Plaintiff's right to enforce the Guaranty, the occurrence of the contractual conditions giving rise to Defendant's liability, Defendant's failure to perform, and Plaintiff's resulting damages. *See id.*; Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23.

The record contains several facts that are not genuinely disputed. The Parties do not dispute that CCG and Greystone entered into the Loan Agreement on or around November 3, 2016. *See* ECF Nos. [75] at ¶1; [99-1] at ¶1. The Parties do not dispute that CCG lent Greystone $3,430,000.00, evidenced by two promissory notes in the amounts of $2,414,750.00 and $1,015,250.00. *See* ECF Nos. [75] ¶2; [99-1] at ¶2. The Parties do not dispute that Defendant executed the Guaranty with CCG as one of the guarantors. *See* ECF Nos. [75] at ¶3; [99-1] at ¶3. The Parties also do not dispute that James Vosotas was named as a guarantor of the Loan Agreement and that a New York judgment was entered against him in the amount of $19,380,664.30. *See* ECF Nos. [75] at ¶¶7, 9; [99-1] at ¶¶7, 9. And the Parties do not dispute that Defendant has not paid any amount under the Guaranty. *See* ECF Nos. [75] at ¶16; [99-1] at ¶16.

14

But those undisputed facts do not resolve Plaintiff's entitlement to judgment as a matter of law. They show that the relevant documents exist and that Defendant signed the Guaranty, but they do not eliminate genuine disputes concerning the elements that actually trigger liability and damages. *See Luxor*, 2013 WL 12064525, at *1; *Anderson*, 241 So. 2d at 177–78. Put differently, Plaintiff must show not only that Defendant signed a Guaranty, but that the Guaranty is enforceable by Plaintiff, that the contractual conditions giving rise to Defendant's liability occurred, that Defendant breached obligations imposed by the Guaranty, and that Plaintiff sustained recoverable damages. *See Luxor*, 2013 WL 12064525, at *1; Fed. R. Civ. P. 56(a). On this record, genuine disputes remain on several issues.

First, the Court concludes that Plaintiff has adequately established, for purposes of summary judgment, that the Assignment and Assumption Agreement and accompanying allonges are properly authenticated and may be considered under Rule 56. "Generally, documents must be properly authenticated in order for them to be considered on summary judgment." *APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1335 (N.D. Ga. 2004). Under Federal Rule of Evidence 901(a), however, the proponent need only produce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The burden is not onerous; rather, the proponent need only demonstrate "a rational basis for its claim that the evidence is what the proponent asserts it to be." *APA Excelsior III*, 329 F. Supp. 2d at 1335 (quoting *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993)). Courts may consider other evidence in the summary judgment record in determining whether a challenged document satisfies Rule 901, and documents that can readily be authenticated at trial may likewise be considered at summary judgment. *See APA Excelsior III*, 329 F. Supp. 2d at 1335; *Burger King Corp. v. Lumbermens Mut. Cas. Co.*, 410 F. Supp. 2d 1249, 1255 (S.D. Fla. 2005).

Here, Plaintiff submitted the Declaration of Muhl, Plaintiff's managing member and authorized representative, who attests under penalty of perjury that the Assignment and Assumption Agreement and related loan documents attached to his declaration are true and correct copies maintained in Plaintiff's business records. *See* ECF No. [74-1] at ¶¶2, 10–15. As Plaintiff's managing member, Muhl further attests that he has personal knowledge of Plaintiff's books and records and of the underlying transaction. *Id.* at ¶¶1–2. That testimony provides a sufficient foundation to authenticate the Assignment and accompanying allonges under Rule 901. *See Bury v. Marietta Dodge*, 692 F.2d 1335, 1338 (11th Cir. 1982) (recognizing that Rule 901 permits authentication by various methods); *Goddard v. City of Atlanta*, No. 1:05-CV-2286-TCB/AJB, 2007 WL 9700876, at *2 (N.D. Ga. Aug. 10, 2007) (finding challenged documents properly authenticated through testimony establishing they were what the proponent claimed them to be). Defendant's objections do not create a genuine dispute regarding authenticity. Defendant does not contend that the Assignment is forged, fabricated, or otherwise not what Plaintiff represents it to be. Instead, Defendant argues that the Assignment contains undated signature pages, that Plaintiff has not produced original hard-copy Notes or allonges, and that Plaintiff has not sufficiently established possession of the original loan documents. *See* ECF Nos. [99] at 7–9; [99-1] at ¶¶11–13; [100] at ¶¶9–12. Those objections challenge the weight and legal effect of Plaintiff's evidence — not its admissibility or authenticity under Rule 901. Plaintiff's legal objection to the documents, standing alone, does not create a genuine issue of material fact regarding whether the Assignment and allonges are authentic documents that may be considered on summary judgment. *See APA Excelsior III*, 329 F. Supp. 2d at 1335; *Burger King*, 410 F. Supp. 2d at 1255. Accordingly, the Court considers the Assignment and Assumption Agreement, the allonges, and Muhl's Declaration in evaluating Plaintiff's Motion for Summary Judgment.

Next, however, Plaintiff has not established, as a matter of law, that a contractual Event of Default occurred in a manner that triggered Defendant's liability under the Guaranty. Plaintiff's liability theory depends on reading the Loan Agreement and Guaranty together to conclude that James Vosotas's alleged default under the separate Construction Loan, his failure to pay debts arising from that loan, and the resulting New York Judgment constituted an Event of Default under the Loan Agreement and triggered Defendant's obligations under the Guaranty. *See* ECF Nos. [74] at 2–7; [75] at ¶¶4–10. Defendant disputes that conclusion, arguing that the New York Judgment involved a different loan, that Plaintiff has not shown a default under the Loan Agreement and Guaranty at issue here, and that the contractual terms involving personal guarantee are unclear, vague, or ambiguous. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–10; [100] at ¶¶2–12; ECF No. [47] at 8. He further disputes that there are no notices, demands, or other communications by CCG or any successor showing a default or breach of the Loan Agreement or Guaranty. *See id.*

The Court must therefore begin with the contractual language. Contract interpretation is generally a question of law for the Court. *See Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). However, where a contract is ambiguous and the parties' intent cannot be determined from the four corners of the document, questions of fact may arise because the Court may consider extrinsic evidence to determine the parties' intent. *See Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996); *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001); *Travelers Prop. Cas. Co. of Am. v. Talcon Grp., LLC*, 631 F. Supp. 3d 1180, 1188 (N.D. Fla. 2022), *aff'd*, 88 F.4th 1371 (11th Cir. 2023). "Questions of fact arise only when an ambiguous contract term forces the court to turn to extrinsic evidence of the parties' intent." *Lawyers Title*, 52 F.3d at 1580. And "[w]hether a contract provision is ambiguous is a

question of law, and, if the facts are not in dispute, the ambiguity can be resolved as a matter of law as well." *Travelers*, 631 F. Supp. 3d at 1188.

Here, Plaintiff relies on Paragraph 8.1 of the Loan Agreement, which identifies "Events of Default." ECF Nos. [1-3] at 58; [74] at 2–7; [75] at ¶¶4–6. Subsection 8.1(a) provides that "[t]he following shall constitute Events of Default hereunder: if [Greystone] shall fail to pay" amounts due under the Notes or otherwise breaches monetary payment obligations under the Loan Documents. ECF No. [1-3] at 58. Unlike subsection 8.1(a), subsection 8.1(m) contains no comparable introductory language. Rather, it provides an incomplete conditional statement that "if any Guarantor shall generally not pay its debts as such debts become due, or shall admit in writing its inability to pay its debts generally," or if specified bankruptcy, insolvency, receivership, or similar proceedings are commenced by or against "such Guarantor." *Id.* at 60. Plaintiff contends that subsection 8.1(m) encompasses James Vosotas's failure to pay debts arising from the separate Construction Loan and that the resulting New York Judgment therefore constituted an Event of Default under this Loan Agreement. *See* ECF Nos. [74] at 2–7; [75] at ¶¶8–10.

The Guaranty contains additional language relevant to Plaintiff's theory. Section 3 of the Guaranty describes the Guaranty as "absolute," "continuing," "unconditional," "joint and several," and states that each guarantor's obligations are "independent of the obligations of Borrower and of the obligations of any other guarantor." *See* ECF No. [1-5] at 4. Section 3 also provides that Lender may enforce the Guaranty upon the occurrence and during the continuance of an Event of Default under the Loan Documents, notwithstanding other circumstances or proceedings involving Borrower or any guarantor. *See id.*

The difficulty is that the contractual provisions do not unambiguously answer the precise question presented by Plaintiff's Motion: whether one guarantor's failure to pay debts arising from

a separate construction loan, and a judgment entered against that guarantor on that separate loan, automatically triggers another guarantor's liability for the full principal amount of the Notes under this Loan Agreement. Subsection 8.1(m) refers to "any Guarantor," which supports Plaintiff's position that the provision is not limited to the Borrower. *See* ECF No. [1-3] at 60. But the Guaranty also refers to the "occurrence" and "continuance" of an Event of Default, and states both that the guarantors' obligations are "joint and several" and that each guarantor's obligations are "independent" of the obligations of any other guarantor. *See* ECF No. [1-5] at 4. Those provisions, read together, are reasonably susceptible to competing interpretations regarding whether James Vosotas's default on a separate loan is sufficient, without more, to trigger Defendant's liability under this Guaranty for the full amount Plaintiff seeks.

Defendant's Response highlights that unresolved interpretive issue. Defendant does not dispute that a New York Judgment was entered against James Vosotas, but contends that the judgment involved a different loan and that Plaintiff has not shown how that judgment, standing alone, establishes a default or breach under the Loan Agreement and Guaranty at issue here. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶9–10; [100] at ¶¶2–12. Defendant also disputes Plaintiff's characterization of the Guaranty's operative language, including Plaintiff's treatment of the terms "occurrence" and "continuance" of an Event of Default. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–6. He further disputes Plaintiff's view of "Events of Default" involving personal guarantee and contends that those provisions are ambiguous. *See* ECF Nos. [47] at 8; [99-1] at 2. Although Defendant's disagreement with Plaintiff's legal interpretation does not itself create a factual dispute, it does require the Court to determine whether Plaintiff's interpretation is compelled by the contract. On the present record, the Court cannot conclude that it is.

Those issues are material because Plaintiff's breach-of-guaranty claim requires Plaintiff to establish breach and damages, and Plaintiff's breach theory depends on the conclusion that a contractual Event of Default occurred and triggered Defendant's payment obligations under the Guaranty. *See Luxor*, 2013 WL 12064525, at *1; *Anderson*, 241 So. 2d at 178. Because the relevant contractual language does not unambiguously compel Plaintiff's interpretation,[1] and because the record contains disputes concerning the Parties' course of performance, the NMTC structure, notice, demand, acceleration, and the meaning and effect of the separate Construction Loan default, Plaintiff has not shown that it is entitled to judgment as a matter of law on liability. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–10, 17–24; [100] at ¶¶2–12. Summary judgment on liability is therefore inappropriate.

As a third issue on liability, the Parties dispute whether the underlying indebtedness remains due and owing. Plaintiff maintains that the principal balance of $3,430,000.00 remains due under the Loan Agreement, exclusive of interest, attorney's fees, costs, and enforcement expenses. *See* ECF Nos. [74] at 2; [74-1] at ¶¶12–15; [75] at ¶¶13, 15. Defendant disputes that assertion, arguing that an issue of fact exists as to whether Plaintiff has incurred any damages as Muhl's declaration filed in support of the Motion contradicts the allegations Muhl has made in his Answer, Affirmative Defenses, and Crossclaim (the "Crossclaim") against Defendant. *See* ECF No. [99] at 4-6. Defendant further argues that an issue of fact exists because Plaintiff has not submitted payment records, loan ledgers, loss calculations, financial statements, tax filings, payoff records, demands for payment, or other accounting records showing what amounts were distributed, what amounts were repaid, who made any payments, when payments were made, or what balance remains due. *See* ECF Nos. [99] at 2–9; [99-1] at ¶¶15, 17–18; [100] at ¶¶9–12. Plaintiff responds that the face amount of the Notes remains due and that no payments toward

principal have been made.  *See* ECF Nos. [101] at 1–8; [102] at ¶¶17–24.  But the discrepancy between Muhl's declaration on summary judgment and the allegations he made in his Crossclaim remains as to whether Plaintiff has sustained any damages whatsoever, which is the third element of a breach-of-guaranty claim.  *See Luxor*, 2013 WL 12064525, at *1.

Specifically, in his Crossclaim seeking contribution, Plaintiff's principal, Muhl, alleged that he "performed all of his duties under the Guaranty and paid amounts due under the Guaranty in full, without contribution from [Defendant]."  ECF No. [62] at ¶42; *see also* ECF No. [99] at 12; ECF No. [99-1] at ¶21.  Muhl further alleges that Defendant "has not paid any amount owed under the Guaranty and Muhl has paid more than his obligations under the guaranty and is, thus, entitled to contribution from [Defendant]" and that "since Muhl has already paid the amount due under the Guaranty, [Defendant] is liable for contribution and is obligated to pay his share owed under the Guaranty."  ECF No. [62] at ¶¶45-46.  At summary judgment, Plaintiff now inconsistently states that Muhl's prior allegations referred only to payments relating to New Markets Tax Credit legal, compliance, reporting, enforcement, and administrative obligations — not repayment of the principal or interest due under the Notes.  *See* ECF Nos. [101] at 2–6; [102] at ¶¶21–22.

At summary judgment, Defendant may oppose Plaintiff's factual assertions by citing "particular parts of materials in the record," including pleadings, affidavits, declarations, admissions, and other materials. Fed. R. Civ. P. 56(c)(1)(A).  Defendant has done precisely that here by directing the Court to Muhl's own prior allegations within the pleadings in the record.  Moreover, factual assertions contained in pleadings generally constitute judicial admissions unless amended or withdrawn. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986).

Even where such statements are not treated as binding judicial admissions, they may nevertheless constitute evidentiary admissions whose significance is for the trier of fact. *See Eubanks v. Henry Cnty., Ga.*, No. 11-CV-3969-AJB, 2014 WL 1309338, at *2 (N.D. Ga. Mar. 31, 2014), *aff'd*, 626 F. App'x 250 (11th Cir. 2015); *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 996 (8th Cir. 2008).

The Court need not decide whether Muhl's prior allegations constitute binding judicial admissions or merely evidentiary admissions. Under either framework, they are properly before the Court as part of the Rule 56 record. Nor may the Court resolve the apparent inconsistency by crediting Muhl's present declaration over his earlier pleading. Doing so would require the Court to weigh competing evidence and determine credibility — functions reserved for the trier of fact, not the Court on summary judgment. *See Carlin Commc'n, Inc.*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. Because Defendant identifies record-based disputes regarding whether the $3,430,000.00 principal balance remains outstanding and whether Plaintiff suffered recoverable damages, Plaintiff has not established a *prima facie* case of breach of guaranty. *See Anderson*, 477 U.S. at 252; Celotex, 477 U.S. at 322.

Fourth and finally, the Parties dispute the effect of the NMTC structure and the January 2023 unwind on the alleged indebtedness. Defendant's central theory is that the NMTC transaction was designed to deliver tax credits, that the applicable tax-credit compliance period ended in or around January 2023, and that the transaction was then unwound in a manner that extinguished the principal debt and discharged the guarantors because no debt remained to be guaranteed. *See* ECF Nos. [99] at 2–8; [99-1] at ¶¶17–24; [100] at ¶¶2–12. Plaintiff disputes that theory and contends that neither CCG nor Plaintiff issued any written satisfaction, release, or discharge of the Notes or Guaranty. *See* ECF Nos. [101] at 1–8; [102] at ¶¶17–24. Plaintiff may be able to ultimately prove

that the NMTC unwind did not satisfy, discharge, or extinguish the Notes, but Rule 56 does not permit the Court to resolve those competing inferences in Plaintiff's favor. *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. Those issues go directly to whether Plaintiff can prove breach and damages. *See Luxor*, 2013 WL 12064525, at *1. They therefore preclude summary judgment on liability.

In sum, the Court does not decide at this stage whether Defendant is liable under the Guaranty, whether Plaintiff's view of the loan documents is correct, whether Defendant's NMTC unwind theory is ultimately viable, or whether Muhl's statements establish payment or merely refer to compliance-related expenses. Those are factually disputed merits issues that must be resolved at trial. At this stage, it is enough that the record, viewed in the light most favorable to Defendant, contains genuine disputes of material fact concerning Plaintiff's right to enforce the Guaranty, the occurrence and effect of any Event of Default, the continued existence of the indebtedness, and Plaintiff's damages. *See* Fed. R. Civ. P. 56(a); *Miccosukee Tribe*, 516 F.3d at 1243; *Anderson*, 477 U.S. at 252. This alone precludes summary judgment on liability.

Plaintiff's Motion is also denied for an independent reason: Defendant's affirmative defenses, standing alone, are sufficient reason to deny summary judgment in this case. For Plaintiff, as the moving party, to obtain summary judgment on liability, it must "show that the record as a whole satisfies each essential element of its case *and* negates any [applicable] affirmative defenses in such a way that no rational trier of fact could find for the non-moving party." *Inversiones YV3343, C.A. v. Lynx FBO Fort Lauderdale, LLC,* No. 21-CV-60197, 2024 WL 2938805, at *4 (S.D. Fla. June 11, 2024) (emphasis in original) (collecting cases). As explained below, Plaintiff has failed to satisfy its burden on most of Defendant's affirmative defenses; therefore, even if there were no disputed issues of fact on liability, summary would still

not be appropriate under the circumstances. Accordingly, Plaintiff's Motion, **ECF No. [74]**, is **DENIED** to the extent it seeks summary judgment on its breach-of-guaranty claim.

### B. Plaintiff's Entitlement to Summary Judgment on Affirmative Defenses

Plaintiff also seeks summary judgment on all twenty-two of Defendant's affirmative defenses. *See* ECF No. [74] at 3–20. As explained above, partial summary judgment may be granted on affirmative defenses. *See Lebron*, 2018 WL 5098972, at *2. But Plaintiff bears the burden of demonstrating that Defendant "cannot maintain these defenses by a preponderance of the evidence." *Id.*; *see also Reed*, 2021 WL 1348489, at *4; *Eli Rsch.*, 2015 WL 5934632, at *2. Of course, Plaintiff cannot carry that burden merely by asserting that Defendant lacks evidence. *See Reed*, 2021 WL 1348489, at *5; *Eli Rsch.*, 2015 WL 5934632, at *3; *Baez*, 2022 WL 22883192, at *5. At the same time, Defendant cannot avoid summary judgment by merely labeling as an affirmative defense what is actually a denial of Plaintiff's *prima facie* case. *See Lebron*, 2018 WL 5098972, at *2; *Marder*, 2016 WL 5404303, at *14. Nor can Defendant preserve an affirmative defense through allegations, speculation, or legal conclusions unsupported by record evidence. *See Baez*, 2022 WL 22883192, at *3; *Meth Lab Cleanup*, 2015 WL 4496193, at *7.

As a threshold issue, Plaintiff argues that Defendant waived his defenses and related objections in the Guaranty. *See* ECF Nos. [74] at 3–15; [101] at 1–7. Specifically, Plaintiff relies upon Section 5(a) of the Guaranty, under which each guarantor agreed, among other things, to "(ii) agree to refrain from asserting, until after repayment in full of the Loans, any defense, right of set-off or other claim which such Guarantor may have against Borrower[.]" ECF No. [1-5] at 6. Plaintiff therefore contends that the waiver provision independently forecloses Defendant's affirmative defenses. The Court agrees that contractual waivers contained in guaranties are

24

generally enforceable.  However, Plaintiff has not demonstrated that the waiver provision may be enforced as a matter of law on the present summary judgment record.

As an initial matter, the applicability of the waiver provision itself depends upon a factual predicate that remains genuinely disputed.  Section 5(a)(ii) expressly provides that each guarantor agrees to refrain from asserting certain defenses "**until after repayment in full of the Loans.**"  ECF No. [1-5] at 6 (emphasis added).  As discussed above, Plaintiff maintains that the Loans have not been repaid and that the full principal balance of $3,430,000.00 remains outstanding. *See* ECF Nos. [1] at ¶30; [74] at 2; [74-1] at ¶¶12–15; [75] at ¶¶11–13.  Defendant, by contrast, contends that the indebtedness has been repaid, extinguished, or otherwise satisfied through the unwinding of the New Markets Tax Credit transaction and Muhl's own payments.  *See* ECF Nos. [99] at 2–8; [99-1] at ¶¶17–24.

Significantly, Defendant points to another portion of the Rule 56 record that appears inconsistent with Plaintiff's present position in Muhl's declaration.  Again, in his Crossclaim, Muhl alleged, *inter alia*, that he "performed all of his duties under the Guaranty and paid amounts due under the Guaranty in full, without contribution from [Defendant]."  ECF No. [62] at ¶42; *see also* ECF No. [99] at 12; ECF No. [99-1] at ¶21.  Plaintiff now explains that Muhl's prior allegations referred only to payments relating to New Markets Tax Credit legal, compliance, reporting, enforcement, and administrative obligations and denies that the allegations referred to the repayment of the principal or interest due under the Notes.  *See* ECF Nos. [101] at 2–6; [102] at ¶¶21–22.

By directing the Court to Muhl's allegations in his Crossclaim, Defendant has opposed Plaintiff's factual assertions, relying on Muhl's declaration, by citing "particular parts of materials in the record," including pleadings, affidavits, declarations, admissions, and other materials.  Fed.

R. Civ. P. 56(c)(1)(A).  As noted above, factual assertions contained in pleadings generally constitute judicial admissions unless amended or withdrawn.  *See Lacelaw Corp.*, 861 F.2d at 226; *Ferguson*, 780 F.2d at 551.  And even if the Court does not treat such statements as binding judicial admissions, they may nevertheless constitute evidentiary admissions whose significance is for the trier of fact.  *See Eubanks*, 2014 WL 1309338, at \*2; *Structural Polymer Grp.*, 543 F.3d at 996.

Regardless of whether the Court considers Muhl's prior allegations as binding judicial admissions or merely evidentiary admissions, they are properly before the Court as part of the Rule 56 record.  And the Court cannot resolve the inconsistency in Muhl's competing statements by crediting Muhl's present declaration over his earlier pleading as that would require the weighing of competing evidence and making determinations of credibility, which is not appropriate on summary judgment.  *See Carlin Commc'n, Inc.*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140.  Accordingly, the present record contains a genuine dispute of material fact regarding whether the Loans or Guarantied Obligations have been repaid or otherwise satisfied.  That factual dispute bears directly upon the continued operation of the contractual waiver provision, which, by its own terms, applies only "until after repayment in full of the Loans."  ECF No. [1-5] at 6.  Because the Court cannot resolve that threshold factual dispute on summary judgment, it likewise cannot conclude, as a matter of law, that Section 5(a) independently bars Defendant's affirmative defenses.  The Court therefore addresses each challenged affirmative defense under the ordinary Rule 56 standard.

**1. Affirmative Defenses on Which Plaintiff is Entitled to Summary Judgment**

For the reasons explained below, Plaintiff is entitled to summary judgment on Defendant's First, Sixth, Eighth, Twelfth, Thirteenth, Seventeenth, and Eighteenth Affirmative Defenses.

a. <u>First Affirmative Defense — Doctrine of Merger of Interests</u>

Plaintiff is entitled to summary judgment on Defendant's First Affirmative Defense, which asserts that the doctrine of merger of interests bars Plaintiff's claim.  *See* ECF No. [47] at 6–7.  Defendant's merger theory is that Plaintiff owns the Loan Agreement and Guaranty, Plaintiff is owned by Greystone Managing Member, LLC ("GMM"), GMM is owned by Branden Muhl, and Muhl is also a co-guarantor under the Guaranty.  *See id.*  Defendant therefore contends that, because Plaintiff "through Muhl" allegedly owns the debt while Muhl is also a co-guarantor, the Guaranty is unenforceable under the doctrine of merger.  *See id.*

Plaintiff has carried its burden as to this defense.  Plaintiff points to the Assignment and Assumption Agreement and allonges and to the Guaranty's assignment provision to show that the assignment of the Loan Agreement, Notes, and Guaranty to Plaintiff did not itself extinguish Defendant's obligations.  *See* ECF Nos. [1-5] at § 8; [1-7]; [1-8]; [74] at 4–5; [75] at ¶¶10–12.  Plaintiff also argues that the doctrine of merger requires a clear intent for merger to occur and that, absent such intent, Florida law presumes the result most beneficial to the party whose interests are at issue.  *See* ECF No. [74] at 4–5; *see also Lassiter v. Kaufman,* 581 So. 2d 147, 148 (Fla.1991) ("[A]n intention that a transaction operate as merger is essential to a merger in equity."); *Contos v. Lipsky,* 433 So. 2d 1242, 1245 (Fla. 3d DCA 1983) (in the absence of a showing of express or implied intent, a court "must presume that the lessee . . . intended the result most beneficial to her, that is, no merger.").

The burden then shifts to Defendant, but he has not identified any record evidence showing that CCG, Plaintiff, or any other relevant party intended the assignment to operate as a merger extinguishing the Guaranty.  *See* ECF Nos. [99] at 10–12; [99-1] at ¶¶11–13, 17–24.  Nor has Defendant identified record evidence establishing that Plaintiff and Muhl are legally the same

person or that the Court should disregard Plaintiff's separate existence.  *See* ECF Nos. [47] at 6–7; [99] at 10–12.  Defendant alleges that GMM and Plaintiff are Muhl's alter egos, but he does not develop an alter-ego or veil-piercing analysis supported by any evidence.  *See* ECF Nos. [47] at 6–7; [99] at 10–12; *see also Dearth v. Collins*, 441 F.3d 931, 934 (11th Cir. 2006).  Ownership and control, without more, do not establish merger of a company's contractual rights into the personal obligations of its owner for purposes of defeating enforcement of an assigned guaranty.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Baez*, 2022 WL 22883192, at *3.  Defendant's Rule 56 response confirms the deficiency.  Defendant groups the merger defense with standing, assignment, and conditions precedent and argues that the assignment is disputed, Plaintiff has not produced originals, and Plaintiff has not proved possession of the Notes.  *See* ECF No. [99] at 10–12.  Those arguments may bear on Plaintiff's *prima facie* case and are addressed above, but they do not establish the distinct doctrine of merger as an affirmative defense.  *See Lebron*, 2018 WL 5098972, at *2; *Marder*, 2016 WL 5404303, at *14.  Accordingly, Plaintiff's Motion is **GRANTED** as to the First Affirmative Defense.  *See Reed*, 2021 WL 1348489, at *4; *Lebron*, 2018 WL 5098972, at *2.

### b. Sixth Affirmative Defense — *Colorado River* Abstention

Plaintiff is also entitled to summary judgment on Defendant's Sixth Affirmative Defense, which asks the Court to abstain under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  *See* ECF No. [47] at 7–8.  Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, and *Colorado River* abstention is an "extraordinary and narrow exception" to that duty.  *Colorado River*, 424 U.S. at 813, 817.  Abstention under *Colorado River* is appropriate only in exceptional circumstances, and the

existence of related or overlapping litigation does not by itself justify abstention. *See id.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14–16 (1983).

Defendant's Sixth Affirmative Defense identifies related state-court and Missouri proceedings and asserts that this case involves similar parties, agreements, and facts. *See* ECF No. [47] at 7–8. But Defendant has not shown that any parallel proceeding will resolve the same breach-of-guaranty claim between Plaintiff and Defendant, nor has Defendant identified exceptional circumstances warranting abstention at this stage. *See* ECF Nos. [47] at 7–8; [99] at 12–13. Defendant's Response merely states that overlapping proceedings in the bankruptcy court raise "genuine issues of abstention" and merger, but it does not analyze the *Colorado River* factors or identify record evidence showing that abstention is warranted here. *See* ECF No. [99] at 12–13. That is insufficient under Rule 56. *See* Fed. R. Civ. P. 56(c)(1)(A); *Baez*, 2022 WL 22883192, at *3. Moreover, this Court has already proceeded to decide substantive motions in this case, including Defendant's Rule 12(b)(1) Motion to Dismiss, and the present Motion is before the Court on a fully developed Rule 56 record. *See* ECF Nos. [74], [75], [99], [99-1], [100], [101], [102], [110]. Further, Defendant has not shown that abstention is appropriate now on the eve of trial after more than 18 months of litigation. *See Colorado River*, 424 U.S. at 813, 817; *Moses H. Cone*, 460 U.S. at 14–16. Accordingly, Plaintiff's Motion is **GRANTED** as to the Sixth Affirmative Defense.

### c. Eighth Affirmative Defense — Lack of Consideration

Plaintiff is entitled to summary judgment on Defendant's Eighth Affirmative Defense for lack of consideration. *See* ECF No. [47] at 8. The undisputed summary judgment record shows that CCG and Greystone entered into the Loan Agreement, that CCG loaned Greystone $3,430,000.00, and that Defendant executed the Guaranty in connection with that loan transaction. *See* ECF Nos. [75] at ¶¶1–3; [99-1] at ¶¶1–3. The Guaranty states that "each Guarantor, in

consideration of the matters described in the foregoing Recitals, which Recitals are incorporated herein and made part hereof, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged" agree to the terms of the Guaranty. *See* ECF No. [1-5] at 3. The Recitals, in turn, state that "each Guarantor will derive material financial benefit from the Loans evidenced and secured by the Notes, the Deed of Trust and the other Loan Documents." *See* ECF No. [1-5] at 2. Defendant does not dispute that he signed the Guaranty or otherwise challenge its authenticity. *See* ECF No. [99-1] at ¶¶1–3.

Looking at the affirmative defense, it states only that Defendant "did not receive adequate consideration for providing the guarantee." ECF No. [47] at 8. But Defendant does not identify record evidence showing that the Guaranty lacked consideration or that the underlying loan transaction failed to supply consideration for the Guaranty. *See* ECF Nos. [99] at 10–11; [99-1] at ¶¶1–3, 19. Defendant instead groups lack of consideration with unconscionability, duress, undue influence, and ambiguity, and relies generally on the alleged NMTC structure and Muhl's later conduct. *See* ECF No. [99] at 10–11. That evidence does not create a genuine dispute as to whether consideration existed when Defendant executed the Guaranty. *See* Fed. R. Civ. P. 56(c)(1)(A); *Anderson*, 477 U.S. at 252. Because Plaintiff has shown through undisputed record evidence that the Guaranty was executed in connection with a $3,430,000.00 loan transaction from which Defendant agreed he was deriving a benefit, and because Defendant has not identified evidence supporting lack of consideration, there is no genuine dispute of material fact and Plaintiff is entitled to summary judgment on Defendant's Eighth Affirmative Defense. *See Reed*, 2021 WL 1348489, at *4; *Lebron*, 2018 WL 5098972, at *2. Plaintiff's Motion is therefore **GRANTED** as to the Eighth Affirmative Defense.

d. Twelfth Affirmative Defense — Statute of Limitations

Plaintiff is entitled to summary judgment on Defendant's Twelfth Affirmative Defense based on the statute of limitations. *See* ECF No. [47] at 8–9. Defendant alleges that Plaintiff's claim is untimely because Plaintiff alleges a default on December 31, 2019, and Defendant contends that a four-year statute of limitations applies. *See id.* Plaintiff responds that a claim on a written guaranty is governed by Florida's five-year statute of limitations for actions founded on a written instrument. *See* ECF No. [74] at 13–14; Fla. Stat. § 95.11(2)(b) (explaining, in pertinent part, that an action shall be commenced within five years if based on "[a] legal or equitable action on a contract, obligation, or liability founded on a written instrument"). Plaintiff is correct. This action is based on a written Guaranty. *See* ECF Nos. [1] at ¶¶13–35; [1-5]; [75] at ¶3; [99-1] at 3. Plaintiff filed suit on December 27, 2024. *See* ECF No. [1]. Accepting Defendant's asserted December 31, 2019 default date for purposes of this defense, Plaintiff filed suit within five years. *See* ECF Nos. [47] at 8–9; [74] at 13–14. Because Plaintiff has shown that there is no genuine issue of material fact as to the Twelfth Affirmative Defense, its Motion is **GRANTED** as to that defense. *See Reed*, 2021 WL 1348489, at *4; *Lebron*, 2018 WL 5098972, at *2.

e. Thirteenth Affirmative Defense — Failure To State A Claim

Plaintiff is entitled to summary judgment on Defendant's Thirteenth Affirmative Defense, which asserts that the Complaint fails to state a claim for breach of guaranty. *See* ECF No. [47] at 9. A defense that merely points out a defect in the plaintiff's *prima facie case* is not a true affirmative defense. *See Inversiones YV3343,* 2024 WL 2938805, at *14 ("Whether a plaintiff has stated a claim goes to the very heart of the plaintiff's *prima facie* case."). As a result, failure to state a claim should instead be viewed as a specific denial. *Id.* (citing *In re Rawson Food*, 846 F.2d at 1348–49 (11th Cir. 1988)). Defendant's Thirteenth Affirmative Defense does not avoid

31

liability by new matter; it argues that Plaintiff has not adequately alleged damages and therefore has not stated a claim. *See* ECF No. [47] at 9. But regardless of whether it is treated as a affirmative defense or a denial, the Complaint alleges the existence of the Loan Agreement, Notes, and Guaranty; Defendant's execution of the Guaranty; the assignment of the Loan Agreement and Guaranty to Plaintiff; an alleged default; Defendant's failure to perform; and a principal balance due of $3,430,000.00. *See* ECF No. [1] at ¶¶11–35. Those allegations are sufficient to state a breach-of-guaranty claim. *See Luxor*, 2013 WL 12064525, at *1. Plaintiff's Motion is therefore **GRANTED** as to the Thirteenth Affirmative Defense.

f. Seventeenth Affirmative Defense — Lack of Subject-Matter Jurisdiction

Plaintiff is entitled to summary judgment on Defendant's Seventeenth Affirmative Defense for lack of subject-matter jurisdiction. *See* ECF No. [47] at 9. Defendant previously moved to dismiss the Complaint under Rule 12(b)(1), arguing that Plaintiff lacked Article III standing and could not satisfy the amount-in-controversy requirement because the underlying debt had allegedly been paid, extinguished, discharged, or otherwise satisfied. *See* ECF No. [67]. The Court denied that motion. *See* ECF No. [110]. In denying the Rule 12(b)(1) motion, the Court concluded that Defendant's arguments concerning payment, extinguishment, discharge, the NMTC unwind, contribution, and double recovery went to the merits of Plaintiff's breach-of-guaranty claim rather than to Article III standing. *See* ECF No. [110] at 9–14. The Court also concluded that Plaintiff adequately alleged a concrete economic injury and satisfied the amount-in-controversy requirement for diversity jurisdiction at that stage. *See id.* Defendant has not identified different record evidence requiring a different jurisdictional conclusion. *See* ECF Nos. [99] at 12–13; [99-1] at ¶¶17–24. Because the jurisdictional defense is indistinguishable from the Rule 12(b)(1)

arguments the Court already rejected, Plaintiff's Motion is **GRANTED** as to the Seventeenth Affirmative Defense.

g. Eighteenth Affirmative Defense — Compulsory Counterclaim/Waiver

Finally, Plaintiff is entitled to summary judgment on Defendant's Eighteenth Affirmative Defense, which asserts that Plaintiff was required to bring this breach-of-guaranty claim as a counterclaim or crossclaim in a related action and that Plaintiff waived the claim by failing to do so. *See* ECF No. [47] at 9. Federal Rule of Civil Procedure 13(a) requires a party to assert as a compulsory counterclaim that, at the time of service, the pleader has against an opposing party if the claim arises out of the same transaction or occurrence and does not require adding a party over whom the court cannot acquire jurisdiction. *See* Fed. R. Civ. P. 13(a). Defendant has not identified the specific action, pleading, opposing party, or procedural posture that would have required Plaintiff to assert this claim as a compulsory counterclaim or crossclaim. *See* ECF Nos. [47] at 9; [99] at 11–13. Defendant's summary judgment response groups this defense with waiver, accord and satisfaction, and set-off, and relies on Muhl's statements and USBCDC's May 2024 declaration. *See* ECF No. [99] at 11–12. Those facts may bear on damages or satisfaction, but they do not show that Rule 13(a), or any analogous rule, required Plaintiff to assert its breach-of-guaranty claim in another action. *See* Fed. R. Civ. P. 13(a). Plaintiff's Motion is therefore **GRANTED** as to the Eighteenth Affirmative Defense.

2. **Affirmative Defenses on Which Plaintiff is not Entitled to Summary Judgment**

For the reasons explained below, Plaintiff is not entitled to summary judgment on Defendant's Second, Third, Fourth, Fifth, Seventh, Ninth, Tenth, Eleventh, Fourteenth, Fifteenth, Sixteenth, Nineteenth, Twentieth, Twenty-First, or Twenty-Second Affirmative Defenses.

a. Second Affirmative Defense — Hindering Performance

Plaintiff is not entitled to summary judgment on Defendant's Second Affirmative Defense, which asserts that Plaintiff hindered Defendant's performance. *See* ECF No. [47] at 6–7. Defendant relies on evidence that Plaintiff allegedly dealt exclusively with Muhl on tax-credit-related contracting, operations, compliance, reporting, and managing-member matters since October 2020, and that Defendant did not receive bills, balances, statements, or accounting regarding the subject loan or Guaranty. *See* ECF Nos. [99] at 11–12; [99-1] at ¶¶18–19; [100] at ¶¶3, 6. Plaintiff disputes the significance and legal effect of that evidence. *See* ECF Nos. [101] at 1–8; [102] at ¶¶18–19. But the Court cannot weigh that evidence on summary judgment. *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. Because Plaintiff has not shown that Defendant cannot maintain the hindering-performance defense, Plaintiff's Motion is **DENIED** as to the Second Affirmative Defense. *See Reed*, 2021 WL 1348489, at *4–5.

b. Third Affirmative Defense — Set-Off

Plaintiff is not entitled to summary judgment on Defendant's Third Affirmative Defense for set-off. *See* ECF No. [47] at 7. In this defense, Defendant asserts that any amounts allegedly owed under the Guaranty should be set off by amounts due from Muhl to Defendant as a co-guarantor or otherwise. *See id.* Plaintiff relies on the Guaranty's waiver provision to argue that Defendant waived any right of set-off, which is an argument the Court already rejected on summary judgment above, and that Defendant failed to provide evidence to support the defense. *See* ECF Nos. [1-5] § 5; [74] at 3–4. As to the latter point, however, a plaintiff cannot prevail on summary judgment by merely asserting that the defendant has no evidence supporting an affirmative defense. *See Reed*, 2021 WL 1348489, at *5; *Eli Rsch.*, 2015 WL 5934632, at *3. Instead, the moving party must do more than make a conclusory "no evidence" assertion and must

34

show, under the Rule 56 record, that the defense cannot be maintained.  *See Reed*, 2021 WL 1348489, at *5.  Because Plaintiff has failed to do more than argue that Defendant has no evidence to support this defense, Plaintiff has not shown entitlement to summary judgment.  *See Anderson*, 477 U.S. at 252; *Reed*, 2021 WL 1348489, at *4–5.  Plaintiff's Motion is **DENIED** as to the Third Affirmative Defense.

> c. <u>Fourth, Fifth, Seventh, and Tenth Affirmative Defenses — Unconscionability, Voidness, Fraud, and Ambiguity</u>

Plaintiff is not entitled to summary judgment on Defendant's Fourth, Fifth, Seventh, and Tenth Affirmative Defenses.  *See* ECF No. [47] at 7–8.  Those defenses respectively assert unconscionability, voidness as a result of material changes to the Loan Documents, fraud or misrepresentation, and ambiguity.  *See id.*  Plaintiff argues that Defendant cannot offer any evidence to support these defenses.  *See* ECF No. [74] at 7-12.  However, merely asserting that the defendant has no evidence supporting an affirmative defense is not enough.  *See Reed*, 2021 WL 1348489, at *5; *Eli Rsch.*, 2015 WL 5934632, at *3.  Again, Plaintiff must do more than make a conclusory "no evidence" assertion; yet, that is exactly what Plaintiff in the Motion does for each of these affirmative defenses, failing to satisfy its burden on summary judgment. *See Reed*, 2021 WL 1348489, at *5; *Baez*, 2022 WL 22883192, at *5.

In his Response, Defendant argues that the record contains genuine disputes concerning the NMTC structure, Muhl's conduct, the alleged misappropriation of interests in the Greystone Hotel project, the disputed assignment, and the meaning of the operative Guaranty language, including the different versions of "occurrence" and "continuance" of an Event of Default.  *See* ECF Nos. [99] at 10–12; [99-1] at ¶¶4–6, 11–12, 19, 21–24.  Further, several of these defenses overlap with disputed issues central to Plaintiff's own claim, including the meaning of the Guaranty, the effect of the NMTC unwind, and whether contractual conditions giving rise to

Defendant's liability occurred.  *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–13, 17–24.  Even if Plaintiff had satisfied its initial burden, Defendant has come forward with evidence that would require the Court to weigh evidence and select among competing reasonable inferences, something the Court cannot do on summary judgment.  *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140.  Accordingly, Plaintiff's Motion is **DENIED** as to the Fourth, Fifth, Seventh, and Tenth Affirmative Defenses.

### d. Ninth Affirmative Defense — Duress or Undue Influence

Plaintiff is not entitled to summary judgment on Defendant's Ninth Affirmative Defense for duress or undue influence.  *See* ECF No. [47] at 8.  Plaintiff argues that Defendant has presented no evidence establishing that Defendant was coerced or improperly induced into executing the Guaranty.  *See* ECF No. [74] at 10–11.  Plaintiff therefore contends that the defense fails as a matter of law because it "is a bare-bones, conclusory allegation for which Defendant has presented no argument and no evidence." *Id.* at 11.

The Court is not persuaded that Plaintiff has demonstrated entitlement to summary judgment on this affirmative defense either.  As discussed above, a plaintiff moving for summary judgment on an affirmative defense bears the burden of demonstrating through the Rule 56 record that the defendant cannot maintain the defense by a preponderance of the evidence.  *See Lebron*, 2018 WL 5098972, at *2; *Reed*, 2021 WL 1348489, at *4.  A motion for summary judgment, however, tests the sufficiency of the evidence — not the sufficiency of the pleading.  *See Baez*, 2022 WL 22883192, at *5.

Here, Plaintiff's argument is directed primarily at the alleged conclusory nature of Defendant's affirmative defense and Defendant's failure to come forward with supporting evidence.  In substance, Plaintiff argues that the defense was inadequately pleaded and lacks

factual support. Such an argument is more properly raised in a Rule 12(f) motion to strike than in a Rule 56 motion for summary judgment. *See Baez*, 2022 WL 22883192, at \*5; *Andreu v. Hewlett-Packard Co.*, No. 15-CV-23270, 2016 WL 1697088, at \*4 (S.D. Fla. Apr. 20, 2016) (rejecting an attempt to "circumvent the timeliness requirement of Rule 12(f) by simply labeling as a summary judgment motion what is essentially a motion to strike affirmative defenses"). Because Plaintiff's argument challenges the sufficiency of the affirmative defense rather than affirmatively demonstrating through competent Rule 56 evidence that Defendant cannot maintain the defense, Plaintiff has not shown entitlement to summary judgment. Accordingly, Plaintiff's Motion is **DENIED** as to Defendant's Ninth Affirmative Defense.

e. <u>Eleventh Affirmative Defense — Breach of Underlying Agreements</u>

Plaintiff is not entitled to summary judgment on Defendant's Eleventh Affirmative Defense, which asserts that the creditor breached the underlying agreements. *See* ECF No. [47] at 8. Defendant relies on the NMTC unwind, Muhl's alleged conduct, Plaintiff's alleged failure to provide notices, demands, balances, and accounting, and the disputed assignment and enforcement of the Loan Agreement and Guaranty. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶8, 10–19, 21–24; [100] at ¶¶2–12. Plaintiff argues that Defendant has not established any breach and that the defense is conclusory. *See* ECF No. [74] at 12–13. But under *Reed* and *Eli Research*, merely stating that Defendant lacks evidence or that the defense is conclusory is not enough. *See Reed*, 2021 WL 1348489, at \*5; *Eli Rsch.*, 2015 WL 5934632, at \*3. Because the record contains factual disputes concerning the parties' performance, the effect of the NMTC unwind, and the existence and amount of any debt, Plaintiff has not shown that Defendant cannot maintain this defense by a preponderance of the evidence. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶10–24. Plaintiff's Motion is **DENIED** as to the Eleventh Affirmative Defense.

### f. Fourteenth Affirmative Defense — Conditions Precedent

Plaintiff is not entitled to summary judgment on Defendant's Fourteenth Affirmative Defense, which denies that all conditions precedent to Plaintiff's recovery were performed or occurred. *See* ECF No. [47] at 9. This defense overlaps substantially with Plaintiff's *prima facie* burden to show that a contractual Event of Default occurred, that any required conditions to acceleration and enforcement were satisfied, and that Defendant's obligations under the Guaranty were triggered. *See Luxor*, 2013 WL 12064525, at *1; Fed. R. Civ. P. 56(a). Defendant disputes whether Plaintiff has established the occurrence and continuance of an Event of Default, whether the New York Judgment on a separate loan triggered the Guaranty at issue here, whether the required notices or demands were given, and whether Plaintiff validly accelerated the indebtedness. *See* ECF Nos. [99] at 7–13; [99-1] at ¶¶4–10, 13. Plaintiff argues that Defendant waived notice and cure rights and that the Guaranty permits enforcement without proceeding first against Greystone. *See* ECF Nos. [1-5] § 5; [74] at 3–7; [101] at 1–8. But those arguments do not eliminate the factual disputes concerning whether the contractual prerequisites to Defendant's liability occurred. *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. Plaintiff's Motion is therefore **DENIED** as to the Fourteenth Affirmative Defense.

### g. Fifteenth Affirmative Defense — Laches

Plaintiff is not entitled to summary judgment on Defendant's Fifteenth Affirmative Defense for laches. *See* ECF No. [47] at 9. Plaintiff argues that Defendant cannot maintain the defense because "such a defense is legally insufficient and Defendant cannot meet his burden of proof on this affirmative defense and must be dismissed." ECF No. [74] at 15.

Although laches generally requires proof of an unreasonable delay in asserting a known right and resulting prejudice to the opposing party, *see Major League Baseball v. Morsani*, 790

So. 2d 1071, 1077 n.11 (Fla. 2001); *Van Meter v. Kelsey*, 91 So. 2d 327, 331 (Fla. 1956), Plaintiff has not established entitlement to summary judgment on this affirmative defense. The question at this stage is whether Plaintiff has demonstrated through the Rule 56 record that Defendant cannot maintain this defense. Plaintiff instead principally argues that Defendant has failed to substantiate the defense with sufficient evidence. That argument does not satisfy Plaintiff's burden on summary judgment. *See Reed*, 2021 WL 1348489, at *4–5; *Eli Rsch., LLC*, 2015 WL 5934632, at *2–3. Moreover, to the extent Plaintiff's argument attacks the conclusory nature of the affirmative defense itself, it resembles an untimely motion to strike rather than a proper Rule 56 motion. *See Baez*, 2022 WL 22883192, at *5; *Andreu*, 2016 WL 1697088, at *4. Accordingly, Plaintiff has not demonstrated that Defendant cannot maintain the Fifteenth Affirmative Defense by a preponderance of the evidence, and Plaintiff's Motion is **DENIED** as to Defendant's Fifteenth Affirmative Defense.

h. <u>Sixteenth Affirmative Defense — Failure To Mitigate</u>

Plaintiff is not entitled to summary judgment on Defendant's Sixteenth Affirmative Defense for failure to mitigate damages. *See* ECF No. [47] at 9. Defendant relies on evidence that Plaintiff allegedly dealt exclusively with Muhl, failed to provide Defendant with bills, balances, statements, or accounting, and then sought the full $3,430,000.00 principal amount without producing loan ledgers, loss calculations, payoff records, or similar documentation. *See* ECF Nos. [99] at 11–12; [99-1] at ¶¶15, 17–19; [100] at ¶¶3, 6, 9–12. Plaintiff disputes that any such evidence defeats enforcement of the Guaranty. *See* ECF Nos. [101] at 1–8; [102] at ¶¶15–19. But because damages remain disputed, as explained above, and Plaintiff has not affirmatively shown that Defendant cannot maintain the mitigation defense, summary judgment under these

circumstances is inappropriate. *See Reed*, 2021 WL 1348489, at *4–5; *Baez*, 2022 WL 22883192, at *3. Plaintiff's Motion is **DENIED** as to the Sixteenth Affirmative Defense.

> i. Nineteenth Affirmative Defense — Authority To Execute Or Enforce The Guaranty

Plaintiff is not entitled to summary judgment on Defendant's Nineteenth Affirmative Defense, which asserts that Muhl and GMM lack authority to execute or enforce the Guaranty. *See* ECF No. [47] at 9. Defendant challenges Plaintiff's assignment, authority, and ability to enforce the Guaranty, arguing that the assignment contains undated signature pages, that Plaintiff has not provided full copies of the Notes with allonges, that Plaintiff has not produced originals, and that Plaintiff has not established possession or holder status. *See* ECF Nos. [99] at 7–10; [99-1] at ¶¶11–13; [100] at ¶¶9–12. Plaintiff disputes those assertions and relies on the Assignment, allonges, and Muhl's affidavit. *See* ECF Nos. [74-1] at ¶¶10–15; [75] at ¶¶10–13; [101] at 4–6. As explained in the liability discussion, those disputes bear directly on Plaintiff's right to enforce the Guaranty. *See Luxor*, 2013 WL 12064525, at *1; Fed. R. Civ. P. 56(a). Although Plaintiff may be able to ultimately prove that it is entitled to enforce the Guaranty, the Court cannot resolve competing inferences about the assignment and enforcement authority at the summary judgment stage in this case. *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. Plaintiff's Motion is **DENIED** as to the Nineteenth Affirmative Defense.

> j. Twentieth Affirmative Defense — Unclean Hands

Plaintiff is not entitled to summary judgment on Defendant's Twentieth Affirmative Defense for unclean hands. *See* ECF No. [47] at 9. Defendant relies on evidence and allegations concerning Muhl's alleged misappropriation of interests in the Greystone Hotel project, inconsistent statements concerning whether amounts due under the Guaranty were paid in full, and conduct in related proceedings. *See* ECF Nos. [99] at 10–12; [99-1] at ¶¶19–24; [100] at ¶¶2–12.

Plaintiff disputes both the factual basis and legal relevance of those matters. *See* ECF Nos. [101] at 1–8; [102] at ¶¶19–24. At this stage, the Court cannot determine whether Defendant's evidence will ultimately establish unclean hands, but Plaintiff has not affirmatively shown that Defendant cannot maintain the defense by a preponderance of the evidence. *See Reed*, 2021 WL 1348489, at *4–5; *Eli Rsch.*, 2015 WL 5934632, at *3. Because the defense overlaps with disputed facts concerning Muhl's role, Plaintiff's enforcement of the Guaranty, and the alleged payment or extinguishment of the debt, Plaintiff's Motion is **DENIED** as to the Twentieth Affirmative Defense.

### k. Twenty-First Affirmative Defense — Accord and Satisfaction

Plaintiff is not entitled to summary judgment on Defendant's Twenty-First Affirmative Defense for accord and satisfaction. *See* ECF No. [47] at 9–10. Defendant relies on Muhl's prior statements that he "performed all of his duties under the Guaranty and paid amounts due under the Guaranty in full, without contribution from Vosotas." ECF Nos. [99] at 11–12; [99-1] at ¶¶21–22. Defendant also relies on Muhl's alleged contribution theory and the NMTC unwind to argue that Plaintiff may have already been made whole. *See* ECF Nos. [99] at 2–8, 11–12; [99-1] at ¶¶17–24. Plaintiff responds that Defendant misreads the prior statements and that Muhl did not pay principal or interest on the Notes, but instead paid QLICI-related legal, compliance, reporting, enforcement, and administrative costs. *See* ECF Nos. [101] at 2–6; [102] at ¶¶21–24. That factual dispute is material to damages, satisfaction, and the amount owed. *See Luxor*, 2013 WL 12064525, at *1. The Court cannot resolve that dispute on summary judgment by crediting Plaintiff's explanation over Defendant's competing inference. *See Carlin Commc'n*, 802 F.2d at 1356; *Skop*, 485 F.3d at 1140. Plaintiff's Motion is **DENIED** as to the Twenty-First Affirmative Defense.

CASE NO. 24-CV-25092-ELFENBEIN

l. Twenty-Second Affirmative Defense — Nonparty Fault/Contribution By Branden Muhl

Finally, Plaintiff is not entitled to summary judgment on Defendant's Twenty-Second Affirmative Defense, which asserts that nonparty Muhl caused or contributed to Plaintiff's alleged injury. *See* ECF No. [47] at 10. Defendant relies on the same evidence concerning Muhl's alleged control over Plaintiff, his role in the NMTC exit, his alleged inconsistent statements concerning payment, and his alleged conduct in excluding Defendant from dealings with Plaintiff. *See* ECF Nos. [99] at 10–13; [99-1] at ¶¶18–24; [100] at ¶¶2–12. Plaintiff disputes that Muhl's conduct is relevant to Defendant's obligations under the Guaranty. *See* ECF Nos. [101] at 1–8; [102] at ¶¶18–24. Whether Defendant can ultimately use Muhl's conduct to reduce or avoid liability is a separate question. At this stage, Plaintiff has not shown that Defendant cannot maintain the defense by a preponderance of the evidence, particularly given the factual disputes concerning damages, payment, satisfaction, and the NMTC unwind. *See Reed*, 2021 WL 1348489, at *4–5; *Baez*, 2022 WL 22883192, at *3. Plaintiff's Motion is **DENIED** as to the Twenty-Second Affirmative Defense.

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment, **ECF No. [74]**, is **GRANTED in part and DENIED in part**. Plaintiff's Motion for Summary Judgment is **GRANTED** as to Defendant's First, Sixth, Eighth, Twelfth, Thirteenth, Seventeenth, and Eighteenth Affirmative Defenses and **DENIED** as to Defendant's Second, Third, Fourth, Fifth, Seventh, Ninth, Tenth, Eleventh, Fourteenth, Fifteenth, Sixteenth, Nineteenth, Twentieth, Twenty-First, and Twenty-Second Affirmative Defenses.

CASE NO. 24-CV-25092-ELFENBEIN

**DONE and ORDERED** in Chambers in Miami, Florida on July 6, 2026.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record

43