**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 24-CV-25092-ELFENBEIN

**USBCDC INVESTMENT FUND 180, LLC**,

Plaintiff/Counter-Defendant,

**v.**

**DANIEL VOSOTAS**,

Defendant/Counter-Plaintiff.
_______________________________________________/

**DANIEL VOSOTAS**,

Third-Party Plaintiff/Cross-Defendant,

**v.**

**BRANDEN MUHL**,

Third-Party Defendant/Cross-Plaintiff.
_______________________________________________/

**ORDER ON MOTION TO DISMISS COMPLAINT**

**THIS CAUSE** is before the Court on Defendant Daniel Vosotas's ("Defendant") Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Incorporated Memorandum of Law (the "Motion"). *See* ECF No. [136]. Plaintiff USBCDC Investment Fund 180, LLC ("Plaintiff") filed a Response in Opposition (the "Response"), ECF No. [144], to which Defendant filed a Reply in Further Support of the Motion (the "Reply"), ECF No. [148]. With leave of Court, Plaintiff filed a limited Sur-Reply addressing a factual assertion contained in footnote 4 of Defendant's Reply (the "Sur-Reply"), ECF No. [155]. The Court has carefully considered the Motion, the Response, the Reply, the Sur-Reply, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion, **ECF No. [136]**, is **GRANTED**.

# I. BACKGROUND

## A. The Underlying Transaction and Plaintiff's Claim

This action arises from a Payment and Completion Guaranty executed in connection with a New Markets Tax Credit financing transaction involving the Greystone Hotel project in Miami Beach, Florida. *See* ECF No. [1] at ¶¶11–13. On November 3, 2016, CCG Sub-CDE 43, LLC ("CCG"), as lender, and Greystone Tenant, LLC ("Greystone"), as borrower, entered into a Loan Agreement pursuant to which CCG allegedly lent Greystone $3,430,000.00. *See id.* at ¶¶11–12. The indebtedness is reflected in two promissory notes, one in the original principal amount of $2,414,750.00 and the other in the original principal amount of $1,015,250.00. *See id.* at ¶12; ECF Nos. [1-3], [1-4].

On the same date, Defendant executed a Payment and Completion Guaranty in favor of CCG. *See* ECF Nos. [1] at ¶13; [1-5]. Plaintiff alleges that Defendant's son, James Vosotas, and Branden Muhl ("Muhl") also executed guaranties in connection with the transaction. *See* ECF No. [1] at ¶¶13–15. According to Plaintiff, Defendant's obligations under the Guaranty were triggered by specified Events of Default under the Loan Agreement, including a default by the borrower under other indebtedness, the borrower's general failure to pay its debts as they became due, or a guarantor's general failure to pay his debts as they became due. *See id.* at ¶¶15–18.

Plaintiff alleges that Greystone entered into a separate construction-loan agreement on December 22, 2017 and that James Vosotas executed guaranties related to that separate loan. *See id.* at ¶¶19–20. Plaintiff further alleges that notices of default were sent to James Vosotas on December 31, 2019, after Greystone failed to repay and keep the construction loan in balance at maturity. *See id.* at ¶¶21–22. On January 13, 2022, the Supreme Court of New York entered judgment against James Vosotas in the amount of $19,380,664.30 related to those construction-

loan obligations. *See id.* at ¶¶23–25; ECF No. [1-6]. Plaintiff alleges that the New York judgment remains unsatisfied and constitutes an Event of Default under the Loan Agreement. *See* ECF No. [1] at ¶¶24–27.

On January 31, 2023, CCG allegedly assigned the Loan Agreement and Guaranty to Plaintiff and executed allonges making the Notes payable to Plaintiff. *See id.* at ¶¶28–29; ECF Nos. [1-7], [1-8], [1-9]. Plaintiff alleges that the entire principal balance of $3,430,000.00 remains due and owing, exclusive of interest and enforcement costs. *See* ECF No. [1] at ¶30. Based upon those allegations, Plaintiff asserts one claim against Defendant for breach of the written Guaranty. *See id.* at ¶¶34–37.

**B. Plaintiff's Jurisdictional Allegations**

Plaintiff filed this action on December 27, 2024, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). *See* ECF No. [1] at ¶¶1–9. Plaintiff alleges that Defendant is a citizen of Florida and that the amount in controversy exceeds $75,000.00. *See id.* at ¶¶2–3. Plaintiff further alleges that it is a citizen of Texas because its sole member is Greystone Managing Member, LLC ("GMM"), GMM's sole member is Muhl, and Muhl, in turn, is a citizen of Texas. *See id.* at ¶1.

Plaintiff's allegation that Muhl was GMM's sole member rests substantially upon a bankruptcy-court-approved Stipulation of Settlement resolving competing claims concerning James Vosotas's interest in GMM. *See id.* at ¶¶4–9; ECF No. [1-10]. Plaintiff alleges that any previous dispute concerning James Vosotas's interest in GMM was resolved through the Stipulation, pursuant to which the Chapter 7 Trustee assigned to Muhl any interest the bankruptcy estate may have held in GMM. *See* ECF No. [1] at ¶¶4–9. Plaintiff accordingly alleges that, when this action was filed, Muhl was GMM's sole member, making Plaintiff a citizen of Texas, and that

Defendant was a citizen of Florida, thereby establishing the existence of complete diversity. *See id.* at ¶¶1–9.

**C. The Prior Federal Action**

This is not Plaintiff's first federal action against Defendant concerning the Guaranty. *See* ECF Nos. [136] at 3; [136-6]. In 2023, Plaintiff filed an action against Defendant in this District captioned *USBCDC Investment Fund 180, LLC v. Daniel Vosotas*, Case No. 23-CV-21887-MOORE (S.D. Fla.) (the "Prior Action").[1] Plaintiff asserted substantially the same breach-of-guaranty claim and invoked diversity jurisdiction based upon its allegation that Muhl was GMM's sole member. *See* ECF No. [136-6] at 2.

Defendant mounted a factual challenge to subject-matter jurisdiction in the Prior Action, contending that James Vosotas remained a member of GMM and that his Florida citizenship destroyed complete diversity. *See id.* at 2–3. The record in that action included GMM's 2018 Operating Agreement, which identified James Vosotas as a member and restricted the transfer of membership interests without unanimous member approval. *See id.* at 3–4. Plaintiff maintained that James Vosotas had been removed from GMM pursuant to earlier transaction documents and submitted tax and other evidence purporting to show that his ownership interest had been reduced to zero. *See id.* at 4.

On September 25, 2023, the Honorable K. Michael Moore rejected Plaintiff's contention and dismissed the Prior Action without prejudice for lack of subject-matter jurisdiction. *See id.* at 5. In doing so, Judge Moore determined that Plaintiff had not established by a preponderance of the evidence that James Vosotas was no longer a member of GMM. *See id.* Because James

---

[1] *See USBCDC Inv. Fund 180, LLC v. Vosotas*, No. 23-CV-21887-KMM, 2023 WL 11796989 (S.D. Fla. Sept. 25, 2023).

Vosotas was a Florida citizen, Plaintiff had failed to establish complete diversity between itself and Defendant. *See id.* at 3–5.

**D. James Vosotas's Bankruptcy and the GMM Dispute**

On October 3, 2023, shortly after dismissal of the Prior Action, James Vosotas filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Florida, captioned *In re James Vosotas*, Case No. 23-18073 (the "Bankruptcy Action"). *See* ECF Nos. [136] at 3; [144] at 4. Barry Mukamal was appointed as the Chapter 7 Trustee (the "Trustee"). *See* ECF No. [144] at 4.

James Vosotas initially filed schedules in which he did not declare any interest in GMM but later amended his schedules to claim a 100% interest in GMM. *See* ECF Nos. [136-2] at 9–10; [144] at 4. Muhl, by contrast, asserted that he owned 100% of GMM and represented that, absent a settlement, he would pursue declaratory relief against the bankruptcy estate to establish his ownership. *See* ECF No. [136-2] at 10. Plaintiff likewise asserted that James Vosotas held no interest in GMM and that it had dealt exclusively with Muhl as GMM's control person since approximately October 2020. *See id.* at 9. The Stipulation collectively refers to those competing ownership claims as the "GMM Dispute." *See id.*

On September 3, 2024, the Trustee filed a Motion to Approve Stipulation for Compromise and Settlement to resolve the GMM Dispute. *See* ECF Nos. [136-2]; [144] at 4–5. The proposed Stipulation was among the Trustee, Muhl, GMM, Plaintiff, and several related Greystone entities. *See* ECF No. [136-2] at 6. Defendant objected to the proposed settlement in the Bankruptcy Court, but his objection was overruled. *See* ECF Nos. [136-1] at 3; [144] at 5.

The Stipulation provides, in pertinent part, that "[i]n full and final settlement," Muhl "shall pay $15,000 to the Trustee, on behalf of the Estate," the Trustee "assigns any right, title, and

interest the Estate may have currently or historically in GMM to Mr. Muhl," and the Trustee "waives any and all future claims the Estate may have had to or against Muhl and GMM." *See* ECF No. [136-2] at 11, ¶4. Paragraph 5(a) further provides that, upon the Bankruptcy Court's approval order becoming final and nonappealable and the Trustee's receipt of the $15,000 settlement amount, the Trustee and the bankruptcy estate would be deemed to have released Muhl, GMM, Plaintiff, and the other specified Greystone parties from claims relating to the GMM Dispute. *See id.* at 11-12, ¶5(a).

Paragraph 13 states that the Stipulation "shall be effective upon execution by all of the Parties hereto, subject only to approval of this Stipulation by final order of the Bankruptcy Court." *Id.* at 14, ¶13. The Bankruptcy Court approved the Stipulation on December 11, 2024, and the order was entered on December 12, 2024. *See* ECF No. [136-1] at 2–3. The approval order explicitly incorporated "the terms and conditions" of the Trustee's motion and the Stipulation and authorized the Trustee "to execute any and all documents necessary to complete the Stipulation." *Id.* at 3, ¶¶1–3. According to Plaintiff, the Trustee executed the Stipulation on December 23, 2024, and the order became final and nonappealable before Plaintiff filed this action on December 27, 2024. *See* ECF No. [144] at 5–6.

**E. Payment of the Settlement Amount**

Each year, the Trustee filed an interim estate property report in the Bankruptcy Action in which he identified each asset of the estate, along with certain information about the assets, such as their estimated net value and the amount of any sale or funds received by the estate for those assets. *See* ECF No. [136-3]. The Trustee's interim report for the period ending June 30, 2025 continued to identify the GMM interest as an asset of the bankruptcy estate, assigned it an estimated net value of $15,000.00, and reported that the estate had received $0.00 from its sale.

*See* ECF Nos. [136-3] at 2; [155-1] at 2. In the report's "Relevant Docket Activity," the Trustee stated that, on September 3, 2024, he "sold the estate's membership interest in Greystone Managing Member LLC to Branden Muhl for $15,000," subject to the Bankruptcy Court's approval order. *See* ECF Nos. [136-3] at 2; [155-1] at 3. The Trustee's subsequent report for the period ending June 30, 2026 reflects that the bankruptcy estate received a $15,000.00 payment from Dunn Law, P.A. on August 12, 2025. *See* ECF No. [136-4] at 2. The Trustee's cash-receipts ledger describes the payment as "Full Settlement; Court Ordered ECF #284" and associates it with the GMM asset. *See id.* at 5. Therefore, the Trustee did not receive the $15,000.00 settlement consideration until approximately eight months after Plaintiff filed this action — a fact that Plaintiff does not dispute. *See* ECF Nos. [1]; [136-4] at 2.

**F. Procedural History of this Action**

Following commencement of this action, Defendant filed an Answer, Affirmative Defenses, and Counterclaim, which he later amended. *See* ECF Nos. [19], [47]. Defendant denied Plaintiff's jurisdictional allegations and asserted lack of subject-matter jurisdiction among his affirmative defenses. *See* ECF No. [47] at 9. On September 22, 2025, Defendant filed a Third-Party Complaint against Muhl, and Muhl thereafter answered and asserted a Crossclaim against Defendant. *See* ECF Nos. [59], [62]. Defendant answered Muhl's Crossclaim on November 6, 2025. *See* ECF No. [64].

On January 12, 2026, Defendant moved to dismiss the Complaint under Rule 12(b)(1), arguing that Plaintiff lacked Article III standing because the relevant indebtedness had been extinguished during the unwinding of the New Markets Tax Credit transaction. *See* ECF No. [67]. On June 26, 2026, the Court denied that motion, concluding that Defendant's arguments confused the distinction between an absence of an Article III injury and Plaintiff's ability to recover any

damages. *See* ECF No. [110] at 9-10. The Court did not decide, and was not asked to decide, whether diversity existed at the time of filing based upon GMM's membership. *See generally* ECF No. [10].

Plaintiff also moved for summary judgment on its claim and on Defendant's affirmative defenses. *See* ECF Nos. [74], [75]. On July 6, 2026, the Court granted the motion in part and denied it in part. *See* ECF No. [113]. Following the Court's rulings on the dispositive motions, the Parties announced at the pretrial conference that they were prepared for trial and the Court advised that the jury trial would commence on July 29, 2026. *See* ECF Nos. [114], [118]. Defendant filed the Motion on July 24, 2026, five days before trial, asserting that Plaintiff had not accurately alleged GMM's membership when the Complaint was filed and that complete diversity was therefore lacking. *See* ECF No. [136]. In light of that jurisdictional challenge, the Court cancelled the jury trial and directed the Parties to complete expedited briefing. *See* ECF No. [146].

In the Motion, Defendant argues that the bankruptcy estate did not assign and transfer its disputed interest in GMM until the $15,000.00 consideration was paid on August 12, 2025. *See* ECF No. [136] at 5–10. As a result of this, Defendant contends that when Plaintiff filed the Complaint on December 27, 2004, James Vosotas or his bankruptcy estate (held by the Trustee) still held an interest in GMM, making GMM and, in turn, Plaintiff, a Florida and Texas citizen, which defeats diversity of citizenship. *Id.* Defendant alternatively argues that the purported transfer failed to comply with GMM's Operating Agreement, that the jurisdictional ruling entered in the Prior Action has preclusive effect, and that the settlement improperly or collusively manufactured diversity in violation of 28 U.S.C. § 1359. *See id.* at 11–17.

Plaintiff responds that the Motion is procedurally improper and rests upon evidence available to Defendant long before the eve of trial. *See* ECF No. [144] at 1–3, 14–15. Plaintiff

argues that Paragraph 13 made the Stipulation effective upon execution and final Bankruptcy Court approval, both of which occurred before this action was filed. *See id.* at 6–9. Plaintiff further argues that payment was an express condition only of the release contained in Paragraph 5(a), not of the assignment contained in Paragraph 4(b). *See id*. Plaintiff also maintains that the necessary approvals under GMM's Operating Agreement were obtained, that the prior jurisdictional ruling does not control facts occurring after dismissal of the Prior Action, and that the settlement resolved a genuine ownership dispute rather than improperly manufacturing jurisdiction. *See id.* at 9–15.

Defendant, in his Reply, argues that Paragraph 13 addresses only the date the Stipulation became a binding contract but does not establish the date "the bargained-for exchange was *performed*." *See* ECF No. [136] at 3 (emphasis in original). Rather, Defendant contends the bargained-for exchange is contained within Paragraph 4, which requires that Muhl pay $15,000.00 to the Trustee and that the Trustee assign any rights the bankruptcy estate may have had in GMM to Muhl along with a release of any future claims. *Id.* at 4. Because Muhl did not pay the $15,000.00 consideration until August 12, 2025 and the releases in Paragraph 5 were not effective until the finality of the Stipulation and the "Trustee's receipt of the Settlement Amount," Defendant states that Plaintiff has not shown that diversity jurisdiction exists, or at a minimum, "the record leaves grave doubt about GMM's membership on December 27, 2024," which must be resolved against jurisdiction. *Id.* at 4-5. Alternatively, Defendant argues that Plaintiff's failure to pay the $15,000.00 to the Trustee until eight months after the alleged transfer of interest in GMM further supports that "this was a sham transaction entered into for the sole reason of engineering federal litigation against" Defendant, constituting a § 1359 violation.

In its limited Sur-Reply, Plaintiff further contends that the Trustee's July 2025 interim report publicly disclosed the nonpayment of the settlement amount months before this action was

filed and approximately one year before Defendant filed the present Motion. *See* ECF No. [155] at 1–2. The Motion is fully briefed and ripe for review.

## II. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction and Rule 12(h)(3)

Federal courts possess only the jurisdiction conferred upon them by the Constitution and Congress. *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction," and the party invoking federal jurisdiction bears the burden of establishing otherwise. *Id.*; *see also McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182 (1936); *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).

Subject-matter jurisdiction cannot be forfeited or waived and courts have an independent obligation to determine whether jurisdiction exists. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002). The Parties cannot create subject-matter jurisdiction through consent, concession, waiver, estoppel, or agreement. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Nor can a party's delay in raising a jurisdictional defect relieve the Court of its duty to examine its authority to adjudicate the action. *See Arbaugh*, 546 U.S. at 514.

Rule 12(h)(3) therefore commands that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A subject-matter-jurisdiction challenge may accordingly be raised at any stage of the proceedings, including after discovery, after adjudication of other dispositive motions, at trial, or even for the first time on appeal. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571 (2004); *Henderson*

*v. Shinseki*, 562 U.S. 428, 434–35 (2011). A dismissal for lack of subject-matter jurisdiction is not a judgment on the merits of the underlying substantive claim. *See Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). It therefore must ordinarily be entered without prejudice. *See id.*

**B. Facial and Factual Jurisdictional Attacks**

Challenges to subject-matter jurisdiction generally take one of two forms: facial attacks and factual attacks. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A facial attack challenges the sufficiency of the jurisdictional allegations in the complaint, and the court generally accepts those allegations as true. *See Morrison*, 323 F.3d at 924 n.5. A factual attack challenges the existence of subject-matter jurisdiction in fact, irrespective of the pleadings. *See id.*

When resolving a factual attack, the court may consider materials outside the pleadings, including affidavits, testimony, contracts, public records, and other evidence relevant to jurisdiction. *See Lawrence*, 919 F.2d at 1529. No presumption of truthfulness attaches to the plaintiff's jurisdictional allegations, and the court may weigh the evidence and resolve factual disputes necessary to determine whether it has jurisdiction. *Id.*; *Carmichael v. Kellogg, Brown & Root Serv., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).

The party invoking federal jurisdiction must establish the jurisdictional facts by a preponderance of the evidence. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). Although courts must not use a factual jurisdictional attack to prematurely decide disputed elements of the merits when jurisdiction and the merits are inextricably intertwined, that limitation

does not apply when the jurisdictional question is independent of the substantive claim. *See Morrison*, 323 F.3d at 926; *Lawrence*, 919 F.2d at 1529.

**C. Diversity Jurisdiction**

District courts possess original jurisdiction over civil actions in which the amount in controversy exceeds $75,000.00 and the action is between citizens of different States. 28 U.S.C. § 1332(a)(1). Section 1332 requires complete diversity, meaning that every plaintiff must be diverse from every defendant. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).

A limited liability company ("LLC") is not treated as a corporation for diversity purposes. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1021 (11th Cir. 2004). Instead, an LLC is a citizen of every State in which any of its members is a citizen. *Id.* at 1022; *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011). When an LLC's member is itself an unincorporated entity, the trial court must trace citizenship through every layer of membership until it reaches a natural person or corporation whose citizenship can be determined under the applicable rules. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017).

Federal law is well settled that diversity jurisdiction is determined according to the facts existing when the complaint is filed. *See Grupo Dataflux*, 541 U.S. at 570. The Supreme Court has long held that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 22 U.S. 537, 539 (1824). The time-of-filing rule applies "regardless of the costs it imposes" and measures jurisdictional challenges against the facts existing at commencement, whether the challenge is made shortly after filing, after trial, or on appeal. *See Grupo Dataflux*, 541 U.S. at 570–71. A subsequent change in a continuing party's

citizenship ordinarily cannot cure the absence of complete diversity at filing. *See id.* at 574–75. Stated differently, where a jurisdictional defect arises from the citizenship of a party when the action commenced, a later change in that party's citizenship cannot retroactively supply jurisdiction. *See id.*

**D. Settlement Agreements and Contract Interpretation**

A settlement agreement is a contract and is interpreted according to ordinary principles of contract law. *See Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). Under Florida law, courts must construe a contract as a whole, giving effect to every provision and avoiding an interpretation that renders any portion meaningless or superfluous. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009).

When contractual language is unambiguous, the Court must enforce the agreement as written and may not rewrite it to achieve a result one party later prefers. *See Beach Towing Servs., Inc. v. Sunset Land Associates, LLC*, 278 So. 3d 857, 860 (Fla. 3d DCA 2019); *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 506 (Fla. 2d DCA 2020). Unambiguous and clear contract provisions addressing the same subject must be read together, and specific provisions must be understood within the context of the complete bargain. *See Beach Towing Servs., Inc.*, 278 So. 3d at 860-61; *see also Equity Lifestyle Props., Inc.*, 556 F.3d at 1242; *JF & LN, LLC*, 292 So. 3d at 506. The question ultimately depends upon the language of the entire instrument and the parties' manifested intent. *See Beach Towing Servs., Inc.*, 278 So. 3d at 860-61.

**III. DISCUSSION**

Defendant presents two principal grounds for dismissal: (1) the Trustee's disputed interest in GMM was not transferred to Muhl before the Complaint was filed because the $15,000.00

consideration had not been paid; and (2) the settlement was improperly or collusively used to create diversity in violation of 28 U.S.C. § 1359. *See* ECF No. [136] at 5–16. The Court first addresses Plaintiff's procedural objection before turning to the jurisdictional issues.

**A. The Trustee's Disputed Interest in GMM**

1. Defendant's Jurisdictional Challenge is Timely

In his filings, Plaintiff emphasizes that Defendant filed the Motion shortly before trial and that the nonpayment of the $15,000.00 appeared on the public bankruptcy docket no later than July 2025. *See* ECF Nos. [144] at 1–3, 14–15; [155] at 1–2. Plaintiff also observes that Defendant previously answered the Complaint, litigated a separate jurisdictional motion, opposed summary judgment, signed the Joint Pretrial Stipulation, and announced that he was ready for trial. *See* ECF No. [144] at 1–3.

The Court agrees that Defendant could and should have investigated and raised this jurisdictional theory substantially earlier. The Trustee's July 2025 interim report disclosed that no funds had been received for the GMM interest, and counsel for Defendant was actively litigating in the bankruptcy proceeding when that report was filed. *See* ECF Nos. [155] at 1–2; [155-2]. Raising the issue on the eve of trial caused significant disruption to the Court, the Parties, prospective witnesses, and the orderly administration of this case. *See* ECF Nos. [136], [146]. The Court therefore admonishes Defendant for failing to raise this jurisdictional challenge promptly after the factual basis for it became reasonably apparent and reminds counsel that such avoidable, eleventh-hour litigation conduct is inconsistent with counsel's obligation "to secure the just, speedy, and inexpensive" resolution of proceedings before this Court. *See* Fed. R. Civ. P. 1.

That delay, however, cannot create federal subject-matter jurisdiction where none exists. As stated above, subject-matter jurisdiction cannot be waived or conferred by a party's conduct,

admission, silence, or consent. *See Arbaugh*, 546 U.S. at 514; *Ins. Corp. of Ireland*, 456 U.S. at 702. Rule 12(h)(3) requires dismissal whenever the absence of jurisdiction becomes apparent. So Defendant's delay in raising this issue, whether inadvertent or calculated, does not permit the Court to proceed any further if complete diversity was absent at the time Plaintiff filed the lawsuit.

The Court's rulings on Defendant's prior motion to dismiss and Plaintiff's motion for summary judgment do not foreclose the present challenge here either. Defendant's prior motion to dismiss raised a different issue — Article III standing and amount-in-controversy arguments based upon the alleged extinguishment of the underlying debt. *See* ECF Nos. [67], [110]. It did not present the distinct contention at issue here — whether Plaintiff and Defendant were both Florida citizens at the time the Complaint was filed because the bankruptcy settlement and assignment of the estate's interest in GMM had not been completed. *See id.* Moreover, the Court's interlocutory rulings cannot relieve it of the continuing obligation to examine subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 514. Having resolved these preliminary issues, the Court turns to determine whether complete diversity of citizenship exists.

2. <u>The Prior Action Establishes the Relevant Jurisdictional Baseline</u>

The Prior Action involved the same Plaintiff, the same Defendant, the same Guaranty, the same asserted citizenship chain, and the same underlying dispute concerning whether James Vosotas remained a member of GMM. *See* ECF No. [136-6]. Judge Moore determined that Plaintiff failed to prove, by a preponderance of the evidence, that James Vosotas had ceased to be a member of GMM. *See USBCDC Inv. Fund 180, LLC*, 2023 WL 11796989, at *2. That determination was essential to the judgment dismissing the Prior Action for lack of diversity jurisdiction, and Plaintiff had a full and fair opportunity to litigate it. *See id.* The Prior Action conclusively establishes the jurisdictional baseline from which the present analysis begins:

Plaintiff had not demonstrated that James Vosotas was no longer a member of GMM before entry of the September 25, 2023 dismissal order. Accordingly, the relevant question is whether the bankruptcy settlement transferred the estate's disputed GMM interest to Muhl before December 27, 2024. *See* ECF No. [1]. If it did not, the jurisdictional defect identified in the Prior Action remained when this action commenced.

3. Plaintiff has not Established that the Estate's Interest was Transferred Before Filing the Complaint

The Stipulation must be construed as a whole and in the context of the controversy it was intended to resolve. *See* ECF No. [136-2] at 6–15. To recap, the Stipulation's recitals establish that James Vosotas, Muhl, and Plaintiff asserted mutually inconsistent positions concerning GMM's ownership. *See id.* at 9–10. The Trustee possessed whatever right, title, interest, or claim the bankruptcy estate acquired from James Vosotas, while Muhl claimed that he already owned 100% of GMM. *See id.* The Parties entered the Stipulation specifically to resolve that "GMM Dispute." *See id.* at 10–11.

Plaintiff relies heavily on Paragraph 13, which states that the Stipulation would become "effective upon execution by all of the Parties," subject to final Bankruptcy Court approval, to argue that the date the transfer of ownership became effective took place before December 27, 2024. *See id.* at 14, ¶13; ECF No. [144] at 6-9. Defendant, however, argues that Paragraph 13 supplies only the date on which the contract became effective, not the date the Trustee transferred the bankruptcy estate's interest in GMM to Muhl. *See* ECF No. [148] at 3-4.

Settlement agreements are governed by ordinary principles of Florida contract law. *See Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 901 F.3d 1294, 1301 (11th Cir. 2018); *Robbie*, 469 So. 2d at 1385. Florida law distinguishes the formation of a binding agreement from the later performance of the obligations that the agreement creates. In other words,

Florida law recognizes that a condition may relate either to the formation of a contract or to performance under an already-existing contract; when the condition concerns performance, "a contract exists that may be enforced pursuant to its terms," even though the corresponding duty has not yet matured or been discharged through performance. *Mitchell v. DiMare*, 936 So. 2d 1178, 1180 (Fla. 5th DCA 2006); *see also Briscoe v. Transamerica Premier Life Ins. Co.*, No. 24-14205, 2026 WL 1180721, at *5 (11th Cir. Apr. 30, 2026) (applying Florida law and explaining that an act occurring after contract formation, upon which a party's obligation to perform depends, constitutes a condition precedent to performance); *Land Co. of Osceola County, LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. 4th DCA 2015) (explaining that conditions precedent to performance are post-formation acts or events that must occur before a right to immediate performance arises).

Florida's decisions concerning bilateral exchanges illustrate the distinction. In *Henry v. Ecker*, the court explained that a purchase-and-sale agreement is "preliminary to the sale and not the sale itself" and therefore remains an "executory contract" whose reciprocal promises are mutually dependent and require concurrent performance. 415 So. 2d 137, 140 (Fla. 5th DCA 1982). Likewise, *Sun First National Bank v. Grinnell* held that a bilateral agreement remains executory while the seller's promise to transfer property and the buyer's promise to furnish the agreed consideration remain unperformed; the parties discharge their contractual duties only when the promised property and consideration are delivered. 416 So. 2d 829, 832–33 (Fla. 5th DCA 1982). Although *Henry* and *Sun First* involved real property, their pertinent reasoning rests on the mutually dependent structure of a bilateral exchange, not upon any rule unique to real property. Florida courts apply the same principle more generally: whether contractual promises are dependent is determined from the parties' intent as expressed in the entire agreement, and a

promise is dependent when it supplies the whole consideration or constitutes an indispensable part of the parties' bargain. *See Steak House, Inc. v. Barnett*, 65 So. 2d 736, 737–38 (Fla. 1953); *Mease v. Warm Mineral Springs, Inc.*, 128 So. 2d 174, 180–81 (Fla. 2d DCA 1961).

Applying those principles here, Paragraph 13 determined when the Stipulation became effective and binding, whereas Paragraphs 4 and 5 prescribed the performance required to consummate the contemplated settlement. *See* ECF No. [136-2] at 11–12, 15, ¶¶4–5, 13. Those provisions must be read together and harmonized so that each is given effect. *See Equity Lifestyle Properties, Inc.*, 556 F.3d at 1242 (11th Cir. 2009); *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000). Paragraph 13 provided that the Stipulation would become effective upon execution by all Parties and final approval by the Bankruptcy Court; it did not state that effectiveness itself completed every performance promised elsewhere in the Stipulation. *See* ECF No. [136-2] at 15, ¶13. Paragraph 4 instead memorialized a single, integrated exchange "[i]n full and final settlement" of the GMM Dispute: Muhl "shall pay" the Trustee $15,000.00, the Trustee "assigns" the estate's interest in GMM to Muhl, and the Trustee waives the estate's related claims. *See id.* at 11, ¶ 4. The word "assigns" in Paragraph 4(b) cannot be isolated from Muhl's corresponding payment obligation in Paragraph 4(a), the paragraph's statement that the provisions collectively constitute the "full and final settlement," or Paragraph 5(a), which expressly conditions the Trustee's release upon both final approval and "the Trustee's receipt of the Settlement Amount." *See id.* at 11–12, ¶¶4–5(a); *see also City of Homestead*, 760 So. 2d at 84.

The Bankruptcy Court's approval order reinforces that distinction because, after approving the Stipulation, it separately authorized the Trustee to execute any documents necessary "to complete" it — language demonstrating that approval made the agreement binding but did not itself complete the contemplated exchange. *See* ECF No. [136-1] at 3, ¶¶1–3. Muhl's $15,000.00

payment supplied the consideration for the Trustee's transfer and therefore went to the essence of the bargain rather than constituting a merely incidental or independent promise. *See Steak House*, 65 So. 2d at 737–38; *Mease*, 128 So. 2d at 180–81. Thus, whether Muhl's payment is characterized as a condition precedent to the Trustee's performance or as a mutually dependent component of the parties' concurrent exchange, the result is the same: execution and final approval created enforceable obligations, but the Stipulation remained executory — and the bargained-for transfer remained unconsummated — until Muhl furnished the required consideration. *See Mitchell*, 936 So. 2d at 1180; *Henry*, 415 So. 2d at 140; *Sun First*, 416 So. 2d at 832–33.

Because Muhl had not paid the $15,000.00 when Plaintiff commenced this action, he had, at most, an enforceable contractual right to obtain the Trustee's interest upon the required performance; he had not yet received the completed transfer necessary to claim sole ownership of GMM. *See* ECF Nos. [1]; [136-2] at 11–12, ¶¶4–5(a); [136-4] at 5. Only after the Trustee received the settlement payment on August 12, 2025 could Muhl obtain the completed transfer and claim complete ownership of GMM, and Plaintiff could thereafter commence a new action based upon the jurisdictional facts then existing. *See* ECF No. [136-4] at 5. That post-filing performance, however, cannot retroactively establish diversity jurisdiction in this action. *See Grupo Dataflux*, 541 U.S. at 574–75.

The Court further notes that Paragraph 4(a) uses prospective, mandatory language: Muhl "shall pay" the settlement amount. ECF No. [136-2] at 11, ¶4(a). Paragraph 4 then places the payment obligation first within the single exchange constituting "full and final settlement." *Id.* at ¶4. Reading Paragraph 4(b) as irrevocably transferring the estate's interest upon execution, irrespective of whether Muhl ever paid the promised consideration, would sever the assignment from the exchange in which the Parties placed it and would permit Muhl to obtain the central

benefit of the settlement without performing his corresponding obligation. The Court will not adopt an interpretation that divorces interdependent provisions from the bargain as a whole or renders the promised consideration functionally immaterial. *See Equity Lifestyle Properties*, 556 F.3d at 1242.

The Trustee's contemporaneous bankruptcy records likewise confirm that the Parties' intention in the Stipulation was to transfer the interest in GMM only after the bargained-for payment was received. The Trustee's report for the period ending June 30, 2025 continued to list GMM as estate property, assigned it a net value of $15,000.00, and recorded $0.00 in sale proceeds received. *See* ECF Nos. [136-3] at 2; [155-1] at 2. The estate recorded receipt of the full $15,000.00 on August 12, 2025, and expressly described that payment as "Full Settlement." ECF No. [136-4] at 2, 5. Consistent with the Court's interpretation of the Stipulation, these records further provide persuasive evidence that the settlement exchange was consummated when the estate received the consideration, not when the Parties merely became contractually obligated to perform.

Plaintiff points to the Trustee's narrative statement that he "sold" the estate's membership interest on September 3, 2024. See ECF Nos. [136-3] at 5; [155-1] at 3. But September 3, 2024 was the date on which the Trustee moved for approval of the proposed settlement, months before the Trustee executed the Stipulation and before the Bankruptcy Court approved it. *See* ECF Nos. [136-2]; [144] at 4–5. The Trustee could not have completed a court-approved sale on September 3, 2024 when neither the final agreement nor the necessary approval order yet existed. The report's shorthand description of the transaction as a "sale" on the motion-filing date therefore does not establish the legal or factual completion date of the assignment.

Plaintiff also relies upon Paragraph 5(a), reasoning that the Parties expressly conditioned the releases upon receipt of payment but did not use identical language in Paragraph 4(b). *See* ECF No. [144] at 7–9. The Court agrees that Paragraph 5(a) expressly identifies receipt of the settlement amount as a condition to the broad release granted to Muhl and the Greystone entities. *See* ECF No. [136-2] at 11–12, ¶5(a). But that provision does not require the Court to treat Paragraph 4(b) as a completed transfer wholly independent of Paragraph 4(a). Paragraphs 4 and 5 perform different functions: Paragraph 4 identifies the consideration exchanged in full settlement, while Paragraph 5 identifies when specified releases become conclusive and irrevocable. *See id.* at 11–12. Giving effect to the express condition governing the releases does not negate the integrated nature of the payment and assignment obligations in Paragraph 4.

More fundamentally, the jurisdictional question is not whether Defendant has conclusively proved that the transfer occurred only upon payment. Because this is a factual attack, Plaintiff bears the burden of proving by a preponderance of the evidence that complete diversity existed on December 27, 2024. *See Osting-Schwinn*, 613 F.3d at 1085–86; *McCormick*, 293 F.3d at 1257. Plaintiff must therefore establish that the estate's disputed interest had left the bankruptcy estate and vested in Muhl before this action was filed.

Plaintiff has not carried that burden. The settlement consideration remained unpaid; the broad release resolving the estate's claims to the GMM interest had not taken effect; the Bankruptcy Court's order contemplated further steps necessary to complete the settlement; the Trustee continued to identify GMM as estate property and to report no sale proceeds; and the Trustee later described the August 12, 2025 payment as the "Full Settlement." ECF Nos. [136-1] at 3; [136-2] at 11–12; [136-3] at 2; [136-4] at 5. Collectively, that evidence demonstrates that the bankruptcy estate's disputed interest had not been fully transferred and the GMM ownership

dispute had not been finally resolved when Plaintiff commenced this action. Because Plaintiff bears the burden of proving jurisdiction, that unresolved dispute of GMM ownership at the time this action was filed requires dismissal. *See Kokkonen*, 511 U.S. at 377; *Osting-Schwinn*, 613 F.3d at 1085–86.

4. The August 2025 Payment Cannot Retroactively Cure the Defect

The record establishes that the Trustee received the $15,000.00 consideration on August 12, 2025. *See* ECF No. [136-4] at 5. Assuming the payment completed the transfer and made Muhl GMM's sole member at that time, the change occurred nearly eight months after Plaintiff filed the Complaint. *See* ECF Nos. [1]; [136-4] at 5. Under *Grupo Dataflux*, a post-filing change in the citizenship of a continuing party cannot create jurisdiction that was absent at commencement. 541 U.S. at 574–75. While Plaintiff remained the same LLC before and after August 12, 2025, the alleged composition and resulting citizenship of its ownership structure changed. That is precisely the type of post-filing citizenship change that cannot cure an original diversity defect. *See id.* Accordingly, if Plaintiff was, in addition to a Texas citizen, a Florida citizen when the Complaint was filed because a Florida citizen or Florida bankruptcy estate retained an interest in GMM, a subsequent transfer of that interest from the Florida citizen or Florida bankruptcy estate to Muhl (a Texas citizen) did not retroactively transform Plaintiff solely into a Texas citizen as of December 27, 2024. *See Grupo Dataflux*, 541 U.S. at 574–75.

**B. Section 1359 does not Provide an Independent Ground for Dismissal**

Defendant alternatively argues that the settlement was improperly or collusively undertaken to manufacture federal jurisdiction in violation of 28 U.S.C. § 1359. *See* ECF Nos. [136] at 13–16; [148] at 7–9. Section 1359 provides that a district court "shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively

made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. In determining whether an assignment was improperly or collusively made under § 1359, the Eleventh Circuit has looked to whether the "assignor retains an interest in the assigned claims, the assignee has no previous connection in the matter, and the assignment is made for the sole purpose of accessing the federal courts." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1315 (11th Cir. 2007) (citing *Kramer v. Caribbean Mills,* 394 U.S. 823, 827-28 (1969)). In particular, the Eleventh Circuit "focus[es] on whether the assignor has retained an interest in the assigned claim." *Id.* (citing *Gilbert v. Wills,* 834 F.2d 935 (11th Cir. 1987)). The motives of the transfer "are irrelevant" when a claimant "makes a bona fide, absolute transfer of its claims to a diverse citizen for the purpose of invoking federal jurisdiction." *Id.* (citing *Kramer*, 394 U.S. at 828); *see also Ffrench v. Ffrench*, 781 F. App'x 930, 931–32 (11th Cir. 2019) ("[W]here a claimant makes a bona fide, absolute transfer of his claims for the purpose of invoking federal jurisdiction, federal jurisdiction will be proper 'so long as the succession and transfer were actual, not feigned or merely colorable.'").

Here, the record establishes that the Stipulation resolved an actual dispute concerning an asset claimed by the Chapter 7 estate. *See* ECF No. [136-2] at 6–15. The Trustee in this case was the assignor who transferred any interest the bankruptcy estate had in GMM to Muhl upon the payment of $15,000.00 and Muhl was the assignee. There is nothing in the Stipulation that contemplates the Trustee, on behalf of the bankruptcy estate, would retain any interest in GMM following the payment of the $15,000.00 nor is there any evidence to support that. Likewise, there is no evidence that the Trustee, as the assignor, would receive any sum of money on behalf of the bankruptcy estate as a result of Plaintiff's recovery in this lawsuit. Instead, the Trustee submitted the settlement to the Bankruptcy Court, Defendant objected, the Bankruptcy Court overruled his

objection, and the Bankruptcy Court found the settlement to be in the best interests of the estate. *See* ECF No. [136-1]. Regardless of Muhl's motivation for the settlement with the Trustee, which resulted in the assignment of GMM's interests to Muhl, the Trustee effectuated a bona fide, absolute transfer of the bankruptcy estate's interests in GMM with the approval of the Bankruptcy Court to a diverse citizen, Muhl. For these reasons, the Court does not find that the assignment was a sham or that the Trustee and Muhl collusively manufactured diversity within the meaning of § 1359, regardless of when the assignment became effective.

**C. Dismissal Without Prejudice is Warranted**

As explained in Section III.A.3, Plaintiff and Defendant were not completely diverse when this action commenced, so the Court lacks subject-matter jurisdiction over Plaintiff's claims in the Complaint. Dismissal must be without prejudice because a court lacking jurisdiction cannot enter a merits adjudication. *See Stalley*, 524 F.3d at 1232–33. Defendant's Third-Party Complaint and Muhl's Crossclaim invoke supplemental subject-matter jurisdiction under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's Complaint. *See* ECF Nos. [59] at 1, ¶2 (invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) and alleging "[t]his Court has subject matter jurisdiction over the claims asserted in this Third-Party Complaint, to the same extent it has subject matter jurisdiction over the Main Case . . . because they are so related to the Plaintiff's claims that they form part of the same case or controversy under Article III of the United States Constitution."); [62] at 4, ¶34 (also invoking the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a) and alleging "Plaintiff maintains that jurisdiction is proper to the same extent it has subject matter jurisdiction over the Main Case . . . because it relates to Plaintiff's original claims and Third-Pary Plaintiff's claims, so that they form the same case or controversy"). Because complete diversity was absent when the action

commenced, the Court never acquired original jurisdiction over Plaintiff's claim to which these derivative claims, that is the claims in the Third-Party Complaint and Crossclaim, could attach through supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). For that reason, the Court likewise dismisses the remaining claims without prejudice.

## IV. CONCLUSION

The Court is mindful that this action has proceeded through extensive discovery, dispositive-motion practice, and pretrial preparation, and the question of subject-matter jurisdiction was not raised until the eve of trial, but those considerations do not permit the Court to disregard a defect in subject-matter jurisdiction. Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [136]**, is **GRANTED**.
2. Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.
3. Defendant's Third-Party Complaint, **ECF No. [59]**, and Third-Party Defendant Branden Muhl's Crossclaim, **ECF No. [62]**, are likewise **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.
4. All pending motions are **DENIED AS MOOT**.
5. All deadlines are **TERMINATED**.
6. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in Miami, Florida on September 15, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**